(120 So. 859)

No. 29399.

## LEWIS v. BODCAW LUMBER CO. OF LOUISIANA et al.

Jan. 28, 1929. Rehearing Denied Feb. 25, 1929.

Thomas W. Robertson and John G. Gibbs, both of Shreveport, for plaintiff.

A. L. Burford, of Texarkana, Ark., Tinsley Gilmer, of Shreveport, and White, Holloman & White, of Alexandria, for defendants.

Pugh, Grimmet & Boatner and J. N. Marcantel, all of Shreveport, amici curiæ.

O'NIELL, C. J. The plaintiff sued to be declared the owner of the mineral rights in the 40 acres of land described as N. E. ¼ of N. W. ¼ of section 15, Tp. 21 N., R. 10 W., in the parish of Webster. The defendant Bodcaw Lumber Company sold the land to Walton H. Lewis on the 10th of November, 1917, by notarial deed, which was promptly recorded, and contained the following reservation of the mineral rights for the period of 15 years, viz.: "Reserving to the grantor, its successors and assigns, for fifteen years from Nov. 25th, 1916, all of the gas, oil and minerals and mineral rights in and under said land, with the right to prospect for and exploit same," etc. Walton H. Lewis sold the land to the present plaintiff, E. D. Lewis, on the 4th of November, 1918, by notarial deed, which was promptly recorded, and which contained the following declaration, immediately following the description of the land, viz.:

"Together with all improvements thereon, and all rights thereto belonging, except that this sale is made subject to the mineral reservation made by the Bodcaw Lumber Company of Louisiana when they deeded the land herein to this vendor, as per deed recorded in Vol. 29, page 142."

The Bodcaw Lumber Company gave a mineral lease on the land to the Humble Oil & Refining Company on the 13th of June, 1924. This suit is brought against the Bodcaw Lumber Company and the Humble Oil Refining Company, and the petition contains a prayer for annulment of the lease. The suit was filed within 10 years—exactly 9 years and 7½ months—after the plaintiff had bought the land from Walton H. Lewis.

There was no attempt on the part of either the Bodcaw Lumber Company or the Humble Oil & Refining Company to exercise the mineral rights which were reserved by the Bodcaw Lumber Company in selling the land to Walton H. Lewis. The plaintiff therefore claims that the mineral rights are prescribed by nonuse for 10 years. The defendants contend that the mineral rights were not subject to the prescription of 10 years, because of the time limit of 15 years, stipulated in the contract; and, in the alternative, the defendants contend that, if the rights were subject to the prescription of 10 years, the prescription was interrupted by the acknowledgment, in the deed from Walton H. Lewis to the present plaintiff, that the sale was made subject to the mineral reservation made by the Bodcaw Lumber Company. The judge of the district court decided that the mineral rights which were reserved by the Bodcaw Lumber Company, in selling the land to Walton H. Lewis, were subject to the prescription of 10 years, but decided also that the prescription was interrupted by the acknowledgment made in the deed from Walton H. Lewis to the present plaintiff, on the 4th of November, 1918, and was interrupted again by the filing of this

suit. The plaintiff's demand was therefore rejected, and his suit dismissed. He has appealed from the decision that the prescription was interrupted, and the defendants have appealed from the decision that the mineral rights were subject to prescription.

That the mineral rights were subject to the prescription of ten years, notwithstanding the limitation of 15 years stipulated in the contract, is settled by the decision rendered today in the case of Bodcaw Lumber Co. of Louisiana v. Magnolia Petroleum Co. et al., No. 29398, ante, p. 847, 120 So. 389.

The district judge in this case cites the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, in support of his ruling that the prescription of 10 years was interrupted by the acknowledgment made by the plaintiff in his deed from Walton H. Lewis. The acknowledgment which was held to have interrupted prescription in the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co. was something more than a mere acknowledgment that the land was sold subject to the reservation already made of the mineral rights, for it was itself a reservation of the mineral rights from the new sale. The new reservation was made thus:

"It is further stipulated that all mineral rights are expressly reserved, having heretofore been sold by the present vendor to the Louisiana Coal & Lumber Company, Limited, subject to the stipulations contained in such sale of mineral rights to said company."

In the present case, the acknowledgment made in the plaintiff's deed from Walton H. Lewis was merely "that this sale is made subject to the mineral reservation made by the Bodcaw Lumber Company of Louisiana when they deeded the land herein to this vendor, as per deed recorded in Vol. 29, page 142." Inasmuch as the reservation of the mineral rights by the Bodcaw Lumber Company in its sale of the land to Walton H. Lew-

is was on record, the subsequent sale of the land by Walton H. Lewis to the present plaintiff could not have been made otherwise than "subject to the mineral reservation made by the Bodcaw Lumber Company," etc. The acknowledgment of that fact, therefore, was merely an acknowledgment of something which Walton H. Lewis and the present plaintiff were compelled to take notice of and could not deny. The purpose of the declaration in the deed from Walton H. Lewis to the present plaintiff, that the land was sold subject to the Bodcaw Lumber Company's previous reservation of the mineral rights, was manifestly to protect Walton H. Lewis, as a warrantor of the title of the property which he was selling. The declaration did not purport to express the intention of interrupting the prescription which was then accruing.

The theory of the decision rendered in Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co. was that there was a new reservation of the mineral rights, in favor of the party who had already reserved them, from the sale of the land. The doctrine that the prescription of ten years by which servitudes are extinguished may be interrupted by a written acknowledgment was announced in Baker v. Pena, 20 La. Ann. 52, in January, 1868. In that case, Madame Leauthier, who owned nearly all of a square of ground in New Orleans, had it surveyed into lots, and, on the 15th of April, 1851, sold four of the lots to Amar Freres (or Brothers), with the use of a 9-foot alley, common to all of the lots; and, through subsequent conveyances, each containing the stipulation for the use of the alley, the plaintiff, Baker, on the 6th of October, 1865, became the owner of one lot and half of another lot which Freres had bought. On the 31st of May, 1860, Madame Leauthier sold the remaining part of her property to the defendant, Pena, by a deed which described the property as being bounded on one side by the "alley nine feet wide, opening on Erato street, and common to said conveyed property, and another sold to Amar Brothers." Baker made no use of the alley during a continuous period exceeding 10 years, after which Pena closed the alley, and, in defense of the suit to compel him to open it, pleaded that the servitude was prescribed by nonuse for 10 years. The court held that the prescription was interrupted by the acknowledgment, which we have quoted, in the deed from Madame Leauthier to the defendant, Pena, on the 31st of May, 1860. It is said in the syllabus of the decision:

"Where a servitude is once established on property, it takes ten consecutive years of non-use by the party in whose favor it is established, to entitle the party on whom it is imposed to prescribe against the right.

"A recognition of the right of servitude by the party owing it will interrupt prescription, which only begins to run again from that date, and must continue for ten years from the date of the interruption before it is prescribed. C. C. art. 3511."

In Baker v. Pena, the defendant, who pleaded the prescription of 10 years, did not own the alley, or land on which the servitude was established. The decision was perhaps influenced in some measure by that fact, although it appears from the following excerpt from the text of the decision that it was founded upon the doctrine of the interruption of prescription by an acknowledgment of the servitude, viz.:

"The right of servitude was granted in April, 1851, and was acknowledged and recognized in May, 1860, by the debtor, which interrupted prescription, and this suit was brought before it could again accrue." C. C. 3486.

There are two later decisions on the subject, one of which clearly maintains that a mere acknowledgment, in a sale of land, that

it is sold subject to a previously recorded sale or reservation of the mineral rights in favor of a third party, does not of itself interrupt the prescription of ten years which may be accruing for nonuse of the mineral rights, viz.: Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765, and Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742.

In Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., S. G. Sample sold to the Louisiana Coal & Lumber Company the oil and gas and other minerals in a tract of 1,260 acres of land, and afterwards sold 80 acres of the land to Hill Moseley, with this stipulation in the deed: "Saving and excepting and reserving unto the said vendor, his heirs and assigns, all oil, and gas and other valuable minerals that may be under the surface of said land." The Louisiana Coal & Lumber Company afterward sold the minerals or mineral rights to J. M. Nabors, and he in turn sold them to the Nabors Oil & Gas Company. Thereafter, and more than 10 years after Sample had sold the mineral rights to the Louisiana Coal & Lumber Company, the Nabors Oil & Gas Company gave a mineral lease to the Louisiana Oil Refining Corporation. Meanwhile no attempt had been made to exercise the rights which the Nabors Oil & Gas Company had acquired through mesne conveyances from Sample. The lessee, Louisiana Oil Refining Corporation, being advised that the mineral rights acquired by its lessor had been lost by the prescription of 10 years before the lease was made, obtained an oil and gas lease from the widow and heirs of Hill Moseley, deceased. The Louisiana Oil Refining Corporation thereafter drilled a well which produced gas in paying quantities, and thereafter transferred the lease to the Southwestern Gas & Electric Company. The Nabors Oil & Gas Company sued the Louisiana Oil Refining Corporation and the Southwestern Gas & Electric Company to annul the lease given by the plaintiff; and the defendants pleaded that the plaintiff's mineral rights were lost by prescription before the lease was made; that the lease was made in error on the part of the lessee; that, as soon as the error was discovered, the lessee acquired a lease from the widow and heirs of Hill Moseley; and that the lessee's operations were conducted under that lease. The plaintiff contended that the prescription was interrupted by the reservation made by Sample in his sale to Hill Moseley; but we held, on rehearing, that the latter reservation inured to the benefit of Sample and his heirs and assigns, and did not interrupt the prescription then accruing against the mineral rights which Sample had previously sold to the Louisiana Coal & Lumber Company and which had been acquired through mesne conveyances by the plaintiff in the suit.

In Sellington v. Producers' Oil Co. the plaintiff's husband sold to the defendant the mineral rights on his land, and, after his death, she sold a part of the land to John Murray and wife. She had become the owner of the land—half of it as surviving partner in community and half of it by inheritance; and, as more than 10 years had elapsed since her husband had sold the mineral rights to the defendant, and as no attempt had been made to exercise the rights, she claimed that the oil company's mineral rights were prescribed. The defendant pleaded that the prescription was interrupted by an acknowledgment made in the act of sale by the plaintiff to John Murray and wife. The acknowledgment was as follows:

"The vendor herein specially reserves and excepts from this sale all of the oil, gas and other minerals in and under said land, with the right of ingress and egress in order to mine and produce the same; the oil, gas and other minerals under said land, with the

right to enter upon said land at any time for the purpose of removing the same, having been heretofore sold by J. M. Sellington to the Producers' Oil Company, as shown by act of sale recorded in the recorder's office, Caddo parish, La."

We held that the mere acknowledgment by the plaintiff that her husband had sold to the defendant the mineral rights on that part of the land which she was then selling to John Murray and wife did not interrupt the prescription which was then accruing against the defendant's mineral rights on the remaining part of the land. In the course of the opinion rendered in the case, it was said that, inasmuch as the mineral rights were actually reserved from the sale to John Murray and wife, the prescription was interrupted as to the land which they bought, but that, as to the remaining part of the land, the case was governed by the ruling in Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765, and not by the ruling in Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723.

Our conclusion is that the mere acknowledgment in the plaintiff's deed from Walton H. Lewis, that the sale was made subject to the mineral reservation previously made by the Bodcaw Lumber Company, did not interrupt the prescription of 10 years which was then accruing against the mineral rights of the Bodcaw Lumber Company.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff is the owner of the mineral rights in the N. E. ¼ of N. W. ¼ of section 15, Tp. 21 N., R. 10 W., in the parish of Webster; and the mineral lease given by the defendant Bodcaw Lumber Company of Louisiana to the defendant Humble Oil & Refining Company is hereby annulled. The defendants are to pay the costs of this suit.