2 So.2d 650

SPEARS v. NESBITT.

SAME v. TRINITY ROYALTY CO., Inc.

Nos. 35979 and 35980.

April 28, 1941.

Rehearing Denied May 26, 1941.

Goff, Goff & Caskey, of Arcadia, for plaintiff and appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for defendants and appellees.

FOURNET, Justice.

These two jactitation or slander of title suits were consolidated for the purposes of trial, having a common object, i. e., the cancellation of two transfers of mineral rights, and the subsequent mesne conveyances thereof affecting property owned by the plaintiff, because of their nonuse for a period of ten years.

Both cases were converted into petitory actions, the defendants asserting that A. W. Mosely, from whom they, as well as the plaintiff, deraigned their titles, joined them (the defendants) and the other land and mineral owners in Section 29, Township 20 North, Range 5 West of Claiborne Parish, in executing, on August 25, 1933, two joint leases commonly known as unitized or integrated lease contracts, one covering the west half of the section and the other the east half thereof, under the provisions of which gas was being produced in paying quantities from a well drilled on the west half of the section at the time of the institution of these suits, the effect of which interrupted the prescription then accruing on the respective servitudes. The defendants also interposed pleas of estoppel.

Both cases were submitted, after the introduction of documentary evidence on agreed statements of facts and from a judgment rejecting plaintiff's demands in both instances, she has appealed.

On January 20, 1925, A. W. Mosely, who was then the owner of the N. ½ of the N.W. ¼ and the N.W. ¼ of the N.E. ¼ of Section 29, Township 20 North, Range 5 West, Claiborne Parish, transferred a "one-half (½) of the oil, gas and other minerals" thereunder to G. L. Shields, from whom the defendant Trinity Royalty Company, Inc., deraigns its title, and on July 10, 1929, he (Mosely) transferred a "one-fourth (¼) of the oil, gas and other minerals" in the N.W. ¼ of the N.W. ¼ of the same section to G. G. Nesbitt, Sr., from whom the defendant G. G. Nesbitt, Jr., acquired his title.

It is admitted that the accruing prescription on both servitudes was interrupted and began running anew on September 13, 1929, by the drilling of a well on that portion of the land affected by both servitudes under a joint lease contract executed by the land owner and the mineral owners. On August 25, 1933, Mosely, together with the other owners in fee of the land in Section 29, joined by the owners of the mineral interests thereunder, including the defendants in both suits, executed two lease con-

tracts in favor of F. F. Meadows, one affecting the east half and the other affecting the west half of Section 29. The defendant G. G. Nesbitt, Jr., did not sign the lease affecting the western half of the section, in which the land affected by his mineral interest was located, but he ratified the lease by an instrument dated September 10, 1936. On June 20, 1938, the Standard Oil Company of Louisiana, the Union Producing Company, and the Sugar Creek Refinery Company, having acquired the leases, commenced the drilling of a well on the west half of Section 29, on property other than that affected by either of the servitudes owned by the defendants in this case. The well was completed in October of 1938, producing gas in paying quantities, out of the proceeds of which Mosely and the other land owners in the western half of Section 29, including the defendants, were paid royalties monthly under the express provisions of the lease contract of August 25, 1933, and according to the ratio their respective mineral acreage bore to the whole tract. In each instance the royalty payments were accompanied by a statement showing a full and complete distribution of the royalties. These royalties were paid to Mosely until his death and thereafter to the plaintiff and her brother, Mosely's heirs. After November 25, 1939, plaintiff having acquired her brother's interest in the particular land in controversy here by partition, received the entire royalty payments herself.

The record shows that there were no drilling operations conducted on any part of the premises covered by the lease on the eastern half of Section 29, which terminated under its terms on August 25, 1939, although the lease had been kept alive during its primary term by the payment of delay rentals provided for therein, of which rentals Mosely received his pro rata share.

On March 23, 1940, plaintiff instituted both of these suits, specially pleading in each case the prescription of ten years liberandi causa.

The lease contracts in the cases under consideration here contain provisions similar to those involved in the cases of Robinson v. Horton et al. (Robinson v. Schnitt et al), La.Sup., 2 So.2d 647, whereby the land owners and the mineral owners pooled their mineral interests, thus unitizing or integrating the same into a whole for the purposes of developing the lease and were to receive royalties from any of the oil or gas produced from any portion of the tract in the proportion that their respective mineral rights bore to the whole, which the lessee was obligated to pay as long as oil or gas was produced in paying quantities. It therefore follows that our decision in those two cases, being handed down this day, controls the issues involved with respect to the western half of Section 29.

We therefore conclude that the defendants are entitled to receive their royalties in accordance with the provisions of the contract of August 25, 1933, as long as oil or gas is produced under the provisions thereof in paying quantities.

Plaintiff contends that inasmuch as there were no actual drilling operations under the lease covering the eastern half of Section 29, and more than ten years have elapsed since any drilling operations were conducted on the property affected by the servitude of the defendant Trinity Royalty Company in the eastern half, that that portion of the company's mineral interest is prescribed and should be decreed extinguished and the titles to that extent cancelled from the conveyance records.

Counsel for the Trinity Royalty Company, Inc., contend, however, that the land owner, by joining the defendant mineral owner in 'the execution of the joint leases of August 25, 1933, thereby acknowledged the company's rights within the meaning and contemplation of Article 3520 of the Revised Civil Code and interrupted the prescription then running against the servitude on the entire tract of 120 acres, the portion lying in the west half of Section 29 N.½ of the N.W.¼), as well as the portion lying in the east half thereof (N.W.¼ of the N.E.¼), citing as authority the cases of Mulhern v. Hayne, 171 La. 1003, 132 So. 659; Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75; and Hightower v. Maritzky, 194 La. 998, 195 So. 518. They further contend that if they are wrong in this respect, since the rights acquired by the company was an indivisible servitude affecting the entire tract, the prescription then accruing thereon was interrupted by the production of gas from the well drilled on the western half of Section 29 under the terms of the lease of August 25, 1933, which contained

the stipulation that the leased premises shall "be considered and treated as owned in indivision by the Lessors and shall be developed and operated as one lease," and the further stipulation that *the drilling of a well on any part of the land therein covered* "capable of producing oil and/ or gas in paying quantities, * * * *shall be held to be a sufficient and reasonable development of the entire leased premises*," (Italics ours) citing as authority therefor Patton et al. v. Frost Lumber Industries, Inc., et al., 176 La. 916, 147 So. 33; Sample v. Whitaker, 172 La. 722, 135 So. 38; and Article 656 of the Revised Civil Code.

"It is provided in our Revised Civil Code that 'a right of servitude is extinguished by the nonusage of the same during ten years,' Art. 789 (see, also, Art. 783, second paragraph), but 'prescription ceases * * * to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed,' .Art. 3520. See, also, Art. 3546. Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, 724; Sellington v. Producers' Oil Co., supra [152 La. 81, 92 So. 742]; Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859, 860; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15; Frost Lumber Industries, Inc. v. Union Power Co., Inc., 182 La. 439, 162 So. 37. 'But article 3520 of the Code * * * does not mean that a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs interrupts prescription. There must be more than a bare acknowledgment; *the acknowledgment must be accompanied by or coupled with*

*"the purpose and intention of the party making the acknowledgment to interrupt the prescription then running."'* Bremer v. North Central Texas Oil Co., Inc., et al., 185 La. 917, 171 So. 75, 77. (Italics ours.) See, also, Frost Lumber Industries, Inc. v. Union Power Co., Inc., supra, where an exhaustive review of the jurisprudence on the subject-matter was made." Goldsmith v. McCoy, 190 La. 320, 182 So. 519, 522.

While it is true that in the case of Mulhern v. Hayne this court declared that where a land owner and a mineral owner executed a mineral lease jointly for a period extending beyond the end of the prescriptive period then accruing, it constituted an acknowledgment within the meaning and contemplation of Article 3520 of the Revised Civil Code, a careful study and analysis of the Mulhern case and the cases decided by this court dealing with joint leases will disclose that the court reached the right conclusion but based the same on the wrong principles of law and that the reason for the holding in that case has, in effect, been overruled by our decision in the recent case of Achee v. Caillouet et al., 1 So.2d 530, handed down March 31, 1941. In that case we concluded that the joining of the land owner with the mineral owner in a lease contract for the development of an oil and gas lease does not constitute an interruption of prescription unless the parties clearly intended to interrupt the same. There must not only be an acknowledgment of the rights of the mineral owner in the joint lease, but this acknowledgment must be coupled with the "purpose and intention of the party making the acknowledgment to interrupt the prescription then running."

There is nothing in the lease under consideration in this case to indicate that the land owner in executing the lease jointly with the mineral owners intended to interrupt the prescription. On the contrary, their intention is clearly to pool their interest for a common cause, i. e., the development of the property. By the terms of the contract the mineral rights of the landowner, as well as those of the defendant company, were unitized or integrated so as to form one indivisible whole and it was especially provided for the sharing of the royalties to be derived therefrom according to their mineral ownership.

The alternative contention of the defendant is equally without merit because there was no acknowledgment of the grant and no use of the same in the manner contemplated by the land owner. The stipulations in the contract that the drilling of a well on any part of the land "shall be held to be a sufficient and reasonable development of the entire leased premises," was written into the lease for the protection of the lessee, for in the paragraph in which such stipulation is found is also to be found the statement that "It is admitted that the *Lessee* would not have entered into this contract without the inclusion of the provisions of this paragraph." (Italics ours.)

When the land owner (plaintiff's ancestor in title) and the defendant executed the two leases of August 25, 1933, dividing the acreage affected by the Trinity Company's servitude, they clearly indicated they did

not intend to have the operations on either lease block affect the rights of the land owner or the mineral owners under the other. They in effect divided the company's servitude into that acreage located in the western half and that located in the eastern half.

We therefore conclude that the trial judge erred in his conclusion that the production of gas on the western half of Section 29, Township 20 North, Range 5 West, Claiborne Parish, had the effect of interrupting the prescription on the entire servitude held by the Trinity Royalty Company, Inc.

For the reasons assigned the judgment in the case of Spears v. Nesbitt, No. 35,979, is affirmed, at appellant's cost. The judgment in the case of Spears v. Trinity Royalty Company, Inc., No. 35,980, is annulled and set aside in so far as it affects the N.W. ¼ of the N.E.¼ of Section 29, Township 20 North, Range 5 West, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Mrs. Margie Lee Mosely Spears, and against the defendant, the Trinity Royalty Company, Inc., ordering that the following instruments, in so far as they affect the N.W.¼ of the N. E.¼ of Section 29, Township 20 North, Range 5 West, be cancelled and erased from the conveyance records of Claiborne Parish, i. e. (1) A deed from A. W. Mosely to G. L. Shields dated January 20, 1925, recorded in Conveyance Book 48, page 563 of the Records of Claiborne Parish, Louisiana; (2) A deed from G. L. Shields to A. J. Hodges dated January 20, 1925, recorded

in Conveyance Book 48, page 568 of the records of Claiborne Parish, Louisiana; and (3) A deed from A. J. Hodges to Trinity Royalty Company, Inc., dated January 8, 1931, recorded in Conveyance Book 83, page 183 of the records of Claiborne Parish, Louisiana; in all other respects the judgment is affirmed. Defendant to pay all costs in this proceeding.

O'NIELL, C. J., does not take part.