HAMITER, Justice.
As the owner and possessor of the Southeast Quarter (SEjTt) of Section 13, Township 23 North, Range 10 West, Webster Parish, containing 160 acres more or less, plaintiff, John E. Haynes, instituted this suit to have cancelled from the conveyance records of the named parish a certain instrument which recognizes the several defendants as owners of mineral rights in and under the described land. The theory of the action is that such mineral rights, termed servitudes under our jurisprudence, have become extinguished by the liberative prescription of ten years because of nonuser.
The judgment of the district court rejected the demands of plaintiff and from it he is appealing.
To recite the pertinent facts of the case chronologically, one Ardis C. Burns, plaintiff’s author in title, purchased from some of the defendants between December 29, 1927, and January 11, 1930, both dates inclusive, approximately 100 acres of the property in question, the acquisition having been made in separate 20 acre tracts and in each of the deeds a portion of the minerals was reserved. From such vendors the remaining defendants acquired by purchase certain interests in the mineral rights so reserved.
On June 17, 1937, which was prior to the accrual of the liberative prescription on any of the servitudes established by the reservations, the then landowner Ardis C. Burns *163 'joined with all of the servitude owners (the defendants) in the execution of an oil, gas and mineral lease in favor of one R. E. Anderson for a primary term of five years. This lease expired on June 17, 1942.
Several months thereafter, specifically on December 16, 1942, Ardis C. Burns (the landowner) and the defendants herein (the .servitude claimants) executed together an instrument entitled “Declaration of Interest” in which they declared in part as follows :
“The undersigned certify that we are the legal owners of the oil, gas and other minerals in and under and that may be produced from the following described lands, situated in the Parish of Webster, State of Louisiana, to-wit:
“SE^ of Section 13, Township 23 N., Range 10 W., estimated to contain 160 acres, more or less.
“The undersigned further certify that our interest in said minerals is subject to that certain oil, gas and mineral lease bearing date as of December 16th, 1942, executed by us in favor of Hunt Oil Company, a Delaware Corporation of Dallas, Texas.
“We further certify that to settle any question of title to the oil, gas and other minerals in and under and that may be produced from the above described lands, the ownership thereof is understood by all parties hereto to be as follows
(Here follows a detailed description, including the amount in mineral acres, of the interest owned by each party.)
“This agreement is binding on our heirs, executors, administrators and assigns, and is executed by us to settle any dispute that might exist as to the ownership of the minerals underlying said above described properties as to this date, December 16th, 1942.”
Simultaneously with the signing of that instrument Burns and such mineral claimants executed a joint oil, gas and mineral lease (to which reference is made in the declaration) in favor of the Hunt Oil Company, it having a primary term of ten years.
The lease was filed for record in the office of the Clerk of Court (the recorder of conveyances) of Webster Parish on December 17, 1942, but the declaration of interest was not deposited there until December 28, 1942.
On December 19, 1942, or two days after the recordation of the Hunt Oil Company lease but prior to that of the declaration of interest, Ardis C. Burns executed a notarial act by which he transferred and conveyed to the -plaintiff herein, John E. Haynes, the 160 acre tract in question. The deed, which reserved and excepted from the conveyance one-fourth of the oil, gas and other minerals in and under the land, was filed for record on December 21, 1942.
When purchasing the property plaintiff, according to his own testimony given at the trial of this case, was informed by Burns that he (Burns) and these defendants had just granted a lease on it to the Hunt Oil Company and also that he (Burns) owned all of the mineral rights, in and under the *165 land except about 47 acres (mineral acres) which the others (the defendants) claimed. Plaintiff further testified that no wells had ever been drilled on the land in search of oil or gas.
At the hearing in this court of the appeal of plaintiff, which was from a judgment rejecting his demands, the opening argument of his counsel was only that since the assailed declaration of interest instrument’ executed by Burns and the defendants was not of record when he acquired'the land he was not bound by the transaction which it evidenced under the doctrine of the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100. To the same effect is the argument in the brief filed in his behalf. Thus, to quote the brief in full, we find:
“The appellant in this case acquired by deed on December 19, 1942, from Ardis C. Burns, the Southeast Quarter of Section 13, Township ’23 North, Range 10 West, Webster Parish, Louisiana, estimated to contain 160 acres, more or less. Said deed was filed for record in the Conveyance Records of Webster Parish, Louisiana, on December 21, 1942. On December 28, 1942, seven days later, there was a document filed for record by the defendants and appellees herein, in which Ardis C. Burns had recognized their interest in certain minerals. This is a suit by Mr. Haynes, appellant herein, to have said document, which was filed for record seven days after his deed was recorded, cancelled from the records' as a cloud on his title to the minerals thereunder.
“It appears to us that these facts which are above stated and which are borne out by the record, bring this case under the ruling and doctrine set out first in McDuffie v. Walker, 125 La. 152, 51 So. 100, which has been reaffirmed hundreds of ■ times since; and in our opinion, unless those decisions can be upset, then the judgment of the district court in this case will have to be reversed, and that is what we are asking this court to do.
“Therefore, we respectfully ask that the judgment of the lower court be reversed and judgment rendered in favor of appellant, as prayed for.”
However, during the course of the oral argument made by counsel for appellees some of the members of this court raised the additional issues, through questions propounded, of whether the servitudes had prescribed prior to the execution of the two instruments of December 16, 1942, and, if they had, whether the prescribed servitudes could be and were revived. Answering, appellees’ counsel contended and argued (1) that the joint five year lease granted in June, 1937, to R. E. Anderson (prescription had not then accrued), together with other acts of the parties, effected an interruption of the ten year prescription then running and caused it to commence anew as of that date; and (2) that if such lease be construed only as extending the -prescriptive period for and during its five year term, *167 resulting in the accrual of prescription in June, 1942, then the execution on December 16, 1942, of the joint lease to the Hunt Oil Company and the declaration of interest constituted a renunciation of the accrued prescription.
The joint lease of June, 1937, did not serve, in our opinion, to- interrupt the running of prescription, as counsel first contended and argued. Neither the language thereof nor any circumstances attending its execution disclose an intention of the landowner to so interrupt; consequently, its only effect, under our jurisprudence, was to provide an extension of the servitudes for the duration of the lease’s five year term, or until June, 1942, at which time prescription accrued. See Achee v. Caillouet, 197 La. 313, 1 So.2d 530.
But, as appellees’ counsel argued under the second contention, there appears to have resulted from the instruments of December 16, 1942, a renunciation of the accrued prescription and an extension of the servitudes for and during the ten year primary term of the Hunt Oil Company oil, gas and mineral lease.
On this point the Revised Civil Code declares :
“Renunciation — Acquired and unacquired prescription. — One can not renounce a prescription not yet acquired, but it is lawful to renounce prescription when once acquired.” Article 3460.
“Methods of making renunciation.- — -Such renunciation of prescription is either express or tacit.
“A tacit renunciation results from a fact which gives a presumption of the relinquishment of the right acquired by prescription.” Article 3461.
“Capacity to renounce right. — To be capable of renouncing the right of prescription, one must be capable of alienating his property.” Article 3462.
It is true that Burns, the landowner, did not expressly renounce the accrued prescription. His execution of the two acts of December 16, 1942, however, furnishes a presumption of the relinquishment of the rights so acquired, thereby resulting in a tacit renunciation. In the declaration of interest Burns and these defendants declared that they were entering into the agreement, which described in detail the several interests owned and which also-announced that it was binding on the heirs, executors, administrators and assigns, “to settle any dispute that might exist as to the ownership of the minerals underlying said above described properties as to this date, December 16, 1942.” And in the ten year oil, gas and mineral lease granted to Hunt Oil Company on that date provision was made for the participation by all of the mineral owners (including these defendants) in the various benefits to flow from the contract, particularly delay rentals and royalties. Thus Burns, by these acts, clearly evidenced an intention to do some *169 thing, and that something was to declare and recognize the rights of defendants to continue in the ownership of their respective mineral interests or servitudes and to benefit therefrom. If he had not so intended to relinquish his acquired prescriptive rights why the necessity and trouble of executing the declaration respecting the settling of “any question of title to the oil, gas and other minerals”, and why was he willing to join with the defendants in granting the new lease and in permitting them to participate in the delay rentals and royalties therefrom for a period of ten years? The intention to relinquish is further disclosed by his statement to Haynes (the plaintiff herein) at the time of the sale that the defendants had just joined him in the execution of the Hunt lease and that he (Burns) owned all of the mineral rights except about 47 acres which the defendants claimed (their servitudes actually covered 47% mineral acr^s).
Considering then that Burns tacitly renounced the accrued prescription and extended the servitudes for ten years from December 16, 1942 (the duration of the Hunt lease), we now seek to determine the only issue argued here by appellant (plaintiff), it being whether or not he, under the •doctrine of the case of McDuffie v. Walker, supra, was bound by the transaction between Burns (from whom he acquired) and the defendants of which he had actual knowledge. The doctrine so invoked is that unrecorded contracts affecting immovable property are null and void as to third persons relying on the public records, actual knowledge thereof not being equivalent to registry.,
In determining this issue it is to be remembered that with respect to the two instruments executed by Burns and the defendants on December 16, 1942, the Hunt lease was placed on the conveyance records of Webster Parish on December 17, 1942, whereas the declaration of interest did not arrive there until December 28, 1942; and that, meanwhile, Haynes obtained his deed from Burns on December 19, 1942, and filed it for record on December 21, 1942.
A study of our jurisprudence discloses that the numerous decisions of this court founded on the doctrine of McDuffie v. Walker, supra, were in cases involving contracts creating or establishing real rights or titles. In the instant case the declaration of interest of which plaintiff complains did not create the servitudes or real rights claimed by defendants. -They were established through reservations contained in the deeds by which Burns acquired in the years 1927 and 1930, both inclusive, and those deeds and reservations were of record when plaintiff purchased. Also of record at the time were the joint leases to R. E. Anderson (1937) and Hunt Oil Company (1942)) respectively, the latter of which recited a primary term of ten years. When purchasing, therefore, plaintiff had record (in addition to his admitted actual) notice of the creation of the servitudes (by the re *171 corded reservations) and also of defendants’ assertion of mineral ownership (by the joint leases).
At least two ways for hindering the loss by prescription of a mineral servitude have been recognized in our jurisprudence, one being by the use of the mineral rights (an interruption) and the other by the minority of an owner or a co-owner (a suspension), each to occur before the accrual of the prescription. And in neither instance has it been held that a third party purchaser of the land is not bound thereby unless evidence of the fact providing the hindrance appears of record. Rather, the purchaser, by reason of the recordation of the act creating the servitude, has been required to determine from facts dehors the record whether an interruption or suspension of prescription has occurred. He, in other words, could not rely on the public records to ascertain if the servitude had been lost; he, with record notice of its creation, accepted the property subject to it, and if in fact it was still valid his acquisition was burdened therewith.
. The instant case provides still another method for hindering the loss by prescription of a mineral servitude, it being by means of a renunciation which the above quoted articles of the Revised Civil Code specifically authorize. Of course, as before shown, one cannot renounce a prescription not yet accrued; but he may renounce it, either expressly or tacitly, after it has accrued. And from the renunciation, which is merely a relinquishment of the renouncer’s rights acquired by prescription, there results a continuance of the original' obligation.
By his execution of the declaration of interest Burns created no new servitudes.. What he did was to waive, relinquish, or renounce his accrued prescriptive rights,, thereby setting aside the prescription that had run in his favor on the already created servitudes and continuing them in full force and effect. Just as with the hindrance of an accruing prescription by means of use or minority, it was not necessary that plaintiff have public notice of the renunciation for it to be binding on him. Plaintiff had record, as well as actual,, knowledge of the creation of those servitudes and of defendants’ claims thereunder, and he took the property subject thereto, whether the servitudes were valid or invalid. At the time of his acquisition, it so happened, they were outstanding and valid.
For the reasons assigned the judgment appealed from is affirmed.