62 So.2d 653

WISE v. WATKINS.

WISE v. GLEASON et al.

No. 39686.

Dec. 15, 1952.

Rehearing Denied Jan. 12, 1953.

Henry G. Hobbs, Minden, for plaintiff-appellant.

Campbell & Campbell, Minden, for defendant-appellee.

PONDER, Justice.

The plaintiff, C. B. Wise, instituted two suits which bear Docket Nos. 14,553 and 14,554, alleging that the defendants were slandering his title to lands in Webster Parish by claiming to own certain mineral interests in his property. The defendants in their answers admitted that they were claiming ownership of mineral rights and set up title in themselves, thereby converting both suits into petitory actions. The two cases were consolidated for trial and for the purpose of appeal. Upon trial of the cases, the lower court gave judgment in favor of the defendants dismissing the plaintiff's suits. The plaintiff has appealed.

We will first consider suit bearing Docket No. 14,554 in the lower court.

W. T. Gleason conveyed the SW¼ of the SE¼ of section 24, T. 22 N., R. 10 W. located in Webster Parish to R. R. Gleason on December 31, 1932, reserving to himself one-half of the minerals underlying the forty acre tract. R. R. Gleason conveyed the forty acres to C. B. Wise, plaintiff herein, on April 6, 1934 with the following reservation:

"The Grantor herein reserves one-half of all oil, gas, and other minerals. in and under said land which has heretofore been reserved by W. T. Gleason in sale to this Grantor."

On April 30, 1936, W. T. Gleason and plaintiff executed a mineral lease on the land in favor of D. L. Perkins for a primary term of five years. On October 21, 1940, W. T. Gleason and Wise, plaintiff, executed a joint act extending the primary term of the lease to April 30, 1943. On July 6, 1943, plaintiff (C. B. Wise), Watkins, the defendant in suit No. 14,553 consolidated herein, W. T. Gleason and F. B. King entered into a lease which contains. the following provision:

"C. Baxter Wise in signing this lease with William T. Gleason and R. D. Watkins, recognizes that William T. Gleason is the owner of one-half of the minerals underlying the SW¼ OF SE¼ of Section 24, Township 22 North, Range 10 West, and that R. D. Watkins, is the owner of one-fourth of the minerals underlying the SE¼ of the SE¼ of Section 24, Township 22 North, Range 10 West, covered by this. lease and admits that it is his intention as the owner of the fee simple title, to-

admit ownership and extend the duration thereof."

Thereafter a number of persons acquired deeds to mineral rights lying in and under the lands from R. R. Gleason, who are also made defendants in this suit.

The defendants contend that the reservation in the deed from R. R. Gleason to plaintiff, dated April 6, 1934, is an acknowledgment of W. T. Gleason's title to the minerals and that the running of prescription is thereby interrupted. They rely on Article 3520 of the LSA–Civil Code.

This Court has on numerous occasions stated that the acknowledgment required by this article of the Code must be more than a bare acknowledgment. It must be accompanied by, or coupled with, the purpose and intention of the party making the acknowledgment in order to interrupt the prescription then accruing. Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Frost Lumber Industries, Inc., v. Union Power Co., Inc., 182 La. 439, 162 So. 37; English v. Blackman, 189 La. 255, 179 So. 306; Hightower v. Maritzky, 194 La. 998, 195 So. 518; Achee v. Caillouet, 197 La. 313, 1 So.2d 530; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650; Baker v. Wilder, 204 La. 759, 16 So.2d 346; Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610; Hanyes v. King, on rehearing, 219 La. 160, 52 So.2d 531.

The reservation under consideration is merely the acknowledgment of something that R. R. Gleason and the plaintiff were compelled to take notice of and could not deny. From our appreciation of the language used in the declaration, that the grantor was reserving the minerals heretofore reserved by W. T. Gleason, the purpose of the statement by the grantor was manifestly to protect the mineral owner and his warranty. The language cannot be said to convey the intention of interrupting prescription. Moreover, R. R. Gleason was never the owner of the mineral rights and could not reserve something he did not own.

The defendants also rely on the holding in the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723. The facts in that case are somewhat different from the facts in the present case but, be that as it may, we do not think it is a sound pronouncement of law and in accord with the later interpretations by this Court of Article 3520 of the LSA–Civil Code relating to acknowledgments, and we, therefore, do not choose to follow it even though the reservation is of similar import to the one involved herein.

The record shows that the servitude became extinguished prior to the execution of the joint lease of July 6, 1943 because of non-user. The defendants contend that the provision in the joint lease of July 6, 1943 recognizing the ownership of the minerals and extension of its term was

a renunciation of the prescription then accrued.

 We have carefully examined the pertinent articles of the LSA–Civil Code and have arrived at the conclusion that Article 3460 of the LSA–Civil Code has no application. That article of the Code provides:

"One can not renounce a prescription not yet acquired, but it is lawful to renounce prescription when once acquired."

It would be inconsistent to apply this article of the Code for the reason that the servitude is extinguished and can only be reestablished by title. Article 789 of the Code provides:

"A right to servitude is extinguished by the non-usage of the same during ten years."

Article 783 of the LSA–Civil Code provides:

"Servitudes are extinguished:

"1. By the destruction of the estate which owes the servitude, or of that to which the servitude is due, or by such a change taking place that the thing subject to the servitude can not be used.

"2. By prescription resulting from non-usage of the servitude during the time required to produce its extinction.

"3. By confusion.

"4. By the abandonment of that part of the estate which owes the servitude.

"5. By the renunciation of the servitude on the part of him to whom it is due, or by the express or tacit remission of his right.

"6. By the expiration of the time for which the servitude was granted, or by the happening of the dissolving condition attached to the servitude.

"7. By the dissolution of the right of him who established the servitude."
Article 3546 of the LSA–Civil Code provides:

"The rights of usufruct, use and habitation and servitudes are lost by non-use for ten years."

Article 770 of the LSA–Civil Code provides:

"The title by which such servitudes are established as can not be acquired by prescription, can be replaced only by a title by which such servitude is acknowledged by the owner of the estate which owes the servitude, or by a final judgment condemning him to permit the exercise of the servitude."

The courts have on occasions referred to an extinguished servitude as being a dead thing or, in other words, no longer in existence. English v. Blackman, 189 La. 255, 179 So. 306; Porter-Wadley Lumber Co. v. Bailey, 5 Cir., 110 F.2d 974. This Court

has also pointed out that a servitude can only be established by acts such as are used in the transfer of title to immovable property. LSA–Civil Code, Articles 743, 766, 770; Long-Bell Petroleum Co. v. Tritico, on rehearing, 216 La. 426, 43 So. 2d 782. Since the servitude in this case has become extinct, it cannot be re-created or established anew except by title. The clause in the King lease of April 6, 1943 could not be construed as establishing a title because it does not purport to re-create or establish a servitude, it is merely a clause in a lease recognizing a previously established servitude and attempting to extend its term.

█ The defendants who purchased mineral interests contend that they were purchasers in good faith relying on the public records and that the plaintiff's declaration contained in the lease of 1943, stating that Gleason owned the minerals, estopped plaintiff from contesting their titles. The defendants cannot single out one instrument on the public records and disregard the other instruments showing the original creation of the servitude and showing the fact that more than ten years had elapsed since the servitude had been created. The records as a whole must be taken into consideration and they are bound by what they reveal. That being true, the defendants cannot say that they have been mislead because they purchased their mineral rights which the public record showed had expired before the lease was executed, unless interrupted by means dehors the record.

In suit bearing Docket No. 14,553 of the lower court, R. D. Watkins and A. Glass conveyed to C. B. Wise the SE¼ of the SE¼ of Section 24, T. 22 N., R. 10 W. located in Webster Parish on July 13, 1929 reserving one-half of the mineral rights. Wise and R. D. Watkins executed a joint mineral lease to D. L. Perkins on April 30, 1936 for a primary term of five years. On October 21, 1940 the parties extended the primary term of the lease by a joint act to April 30, 1943. On July 6, 1943, Wise, Watkins, W. T. Gleason, and King entered into a joint lease for a primary term of ten years, previously referred to, covering this land and other lands in suit No. 14,554, containing the provision recognizing W. T. Gleason and Watkins' ownership of minerals and to extend the duration thereof. The record shows that at the time this joint lease was entered into the servitude or mineral rights had previously become extinguished. The contention advanced in this case is the same as was advanced in the other suit, viz.: that the provision in the 1943 lease was a renunciation of accrued prescription or the creation of a new servitude. We have already disposed of this issue and concluded that there is no merit in this contention.

For the reasons assigned, the judgment of the district court in both of these consolidated cases is reversed and set aside, the suits are reinstated and it is now or-

dered that there be judgment in suit, bearing Docket No. 14,554 of the lower court, in favor of the plaintiff, C. B. Wise, decreeing him to be the owner of all minerals underlying the SW¼ of the SE¼ of Section 24, Township 22 N., Range 10 W. in Webster Parish. It is further ordered, adjudged and decreed that the following instruments affecting this tract of land are null and void and ordered cancelled from the records, viz.: The deed from W. T. Gleason to R. R. Gleason, dated February 8, 1939, in which R. R. Gleason acquired one-fourth of the minerals underlying the above described land, recorded in Volume 138 at page 97 of the records of Webster Parish, Louisiana; the deed from W. T. Gleason to R. R. Gleason, dated August 12, 1943, in which R. R. Gleason acquired an additional undivided one-half of the minerals, recorded in Volume 161 at page 589 of the records of Webster Parish, Louisiana; the deed from R. R. Gleason to B. G. Gantt, dated August 17, 1943, in which B. G. Gantt acquired an undivided one-fourth of the minerals, recorded in Volume 161 at page 589 of the Conveyance Records of Webster Parish; the deed from R. R. Gleason to A. L. Coffee, dated November 5, 1943, in which A. L. Coffee acquired one-eighth of the minerals, recorded in Volume 164 at page 28 of the Conveyance Records of Webster Parish; the deed from B. G. Gantt to Frank B. Treat, dated April 12, 1944, in which Frank B. Treat acquired one-eighth of the minerals, recorded in Volume 165 at page 597 of the Conveyance Records of Webster Parish; the deed from R. R. Gleason to Frank B. Treat, dated April 12, 1944, in which Frank B. Treat acquired an additional one-sixteenth of the minerals, recorded in Volume 165 at page 598 of the Conveyance Records of Webster Parish. Costs of this suit to be paid by the defendants.

It is further ordered that there be judgment in suit bearing Docket No. 14,553 of the lower court in favor of the plaintiff, C. B. Wise, decreeing him to be the owner of all minerals underlying the SE¼ of the SE¼ of Section 24, Township 22 N., Range 10 W. located in Webster Parish. It is further ordered, adjudged and decreed that the minerals reserved in the deed from R. D. Watkins and A. Glass to C. B. Wise, dated July 13, 1929 as shown in Volume 84 at page 215 of the Conveyance Records of Webster Parish, are extinguished. Defendants to pay all costs.

HAMITER, J., dissents and assigns written reasons.

HAMITER, Justice (dissenting).

Considering that mineral rights are deemed in our jurisprudence to be prescriptible servitudes I do not agree with the majority that the provisions of LSA–Civil Code Article 3460, which relate to the renunciation of prescription generally, are inapplicable to them. My views on the subject are given in some detail in the majority opinion on the original hearing, as well as in a dissenting opinion on re–

hearing, of Haynes v. King, 219 La. 160, 52 So.2d 531. See also Nabors Oil & Gas Company v. Louisiana Oil Refining Company, 151 La. 361, 394, 91 So. 765, Bodcaw Lumber Co. of Louisiana v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389, and McDonald v. Richard, 203 La. 155, 13 So.2d 712.

But assuming for the sake of argument that the mineral servitudes involved herein could not have been re-created or re-established except by title (as the majority holds), it is my belief that such a re-creation and re-establishment of them resulted from Wise's execution of the lease dated July 6, 1943 in which he recognized or acknowledged the mineral ownership of William T. Gleason and R. D. Watkins and expressed an intention to "extend the duration thereof." The basis for the majority holding is LSA–Civil Code Article 766 which states that discontinuous servitudes (to which class a mineral servitude belongs, since it needs the act of man to be exercised—LSA–Civil Code Article 727) can be established only by title. A title is nothing more than written evidence of ownership, ordinarily but not necessarily a deed. It can be a judgment of court, a legislative act, a probated will, or some other writing sanctioned by law. And this suggests the question: Does our Civil Code permit the establishment of a discontinuous servitude by some title other than a deed? In my opinion it does. Following, and in the same section containing, the mentioned Article 766 is Article 770 which reads:

"The title by which such servitudes are established as can not be acquired by prescription, can be replaced only by a title by which such servitude is acknowledged by the owner of the estate which owes the servitude, or by a final judgment condemning him to permit the exercise of the servitude."

Which is to say, as I interpret the article, that for the establishment of the servitude by title it is sufficient, as a substitute for a deed, that there be a written acknowledgment of its existence by the owner of the servient estate or a final judgment condemning him to permit the exercise thereof. The servitudes involved in the instant case were so acknowledged by the landowner when executing the lease of July 6, 1943, and his written acknowledgment sufficed as title thereto.

It may be said, additionally, that the lease provision in question was effective and binding on the grantor Wise as being a stipulation pour autrui which provided advantages for Gleason and Watkins. As said in LSA–Civil Code Article 1890:

"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third

person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

I respectfully dissent.