YARRUT, Judge.
This case was transferred here by our Supreme Court because it involves a declaratory judgment (Leiter Minerals, Inc. v. California Company et al., 239 La. 116, 118 So.2d 124), and followed the modification of a decree of the U. S. Court of Appeals, Fifth Circuit, 224 F.2d 381, by the Supreme Court of the United States, 352 U.S. 220, 77 S.Ct. 287, 292, 1 L.Ed.2d 267, with a recommendation in the following language:
“The Government contends that Act No. 315 of 1940 does not apply when the parties themselves have contracted for a reservation of specific duration and that if the statute is -construed to apply to this situation it would impair the obligation of the Government’s contract. Petitioner disagrees. The Supreme Court of Louisiana has never considered the specific issue or even discussed generally the rationale of the statute, especially with reference to problems of constitutionality. The District Court [127 F.Supp. 439] recognized the importance of the statute in deciding this case; it also recognized that a problem of interpretation was involved, that 'the statute cannot be read by him who runs. What are the *78 situations to which the statute is applicable? Is the statute merely declaratory of prior Louisiana law? What are the problems that it was designed to meet? The answers to these questions are or may be relevant. Before attempting to answer them and to decide their relation to the issues in the case, we think it advisable to have an interpretation, if possible, of the state statute by the only court that can interpret the statute with finality, the Louisiana Supreme Court. The Louisiana declaratory judgment procedure appears available to secure such an interpretation, La.Rev.Stat., 1950, § 13 :- 4231 et seq., and the United States of course may appear to urge its interpretation of the statute. See Stanley v. Schwalby, 147 U.S. 508, 512-513, 13 S.Ct. 418, 419, 420, 37 L.Ed. 259. It need hardly be added that the state courts in such a proceeding can decide definitively only questions of state law that are not subject to overriding federal law.
“We therefore modify the judgment of the Court of Appeals to permit an interpretation of the state statute to be sought with every expedition in the state court in conformity with this opinion.”
Plaintiff contends that the Act of 1940 makes imprescriptible all mineral reservations in transfers to the United States; while defendants contend it does not apply to a mineral reservation specifically limited ex contractu as to time and manner of exercise in the deed of acquisition.
The District Court held: (1) Though the deed from Thomas Leiter to the United States was executed in 1938, the 1940 statute was applicable, being retrospective in its operation, and made Leiter’s mineral reservation imprescriptible; and (2) As so interpreted and applied, such statute is constitutional.
The land was acquired in December 1938, by conventional sale to the United States, subject to the following mineral reservation by the vendor (plaintiff) :
“The Vendor reserves from this sale the right to mine and remove, or to grant to others the right to mine and remove, all oil, gas and other valuable minerals which may be deposited in or under said lands, and to remove any oil, gas or other valuable minerals from the premises; the right to enter upon said lands at any time for the purpose of mining and removing said oil, gas and minerals, said right, subject to the conditions hereinafter set forth, to expire April 1, 1945, it being understood, however, that the vendors will pay to the United States of America, 5% of the gross proceeds received by them as royalties or otherwise from all oil or minerals so removed from in or under the aforedescribed lands, until such time as the vendors shall have paid to the United States of America, the sum of $25,000, being the purchase price paid by said United States of America for the aforedescribed properties.”
The statute involved, Act 315 of 1940, LSA-R.S. 9 :5806, inter alia, provides:
“When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm, or corporation, and by the act of acquisition, verdict, or judgment, oil, gas, or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, or other minerals or royalties, still in force and effect, the rights so reserved or previously sold shall be imprescribable.”
The Act of 1940 was the successor to two Acts of 1938 (Nos. 68 and 151) in effect when the Government acquired the property from plaintiff, containing the same recital as to imprescriptibility against the United States.
*79 The fundamental concept of mineral reservations in Louisiana, as well as the history and public policy of Act 315 of 1940, is so well epitomized in an article in Louisiana Law Review, Vol. 13, p. 153, that we quote therefrom, as follows:
“One of the cardinal principles of Louisiana mineral law is the 'non-ownership’ theory of mineral rights. In the main, the non-ownership theory is grounded upon the simple civilian concept that there are but two separate kinds of interest in land — full ownership and servitudes. One of the best statements of the Louisiana Law on the subject is found in the opinion of the Louisiana Supreme Court in the celebrated case of Wemple v. Nabors Oil and Gas Company, 154 La. 483, 97 So. 666. So firmly fixed is this concept that only in one other area has there been a successful attempt to create separate estates in realty, that establishing the separate estate in timber. La. R.S.1950, 9:1103.
“Act 315 of 1940 in effect states that a mineral servitude reserved by a landowner in a sale of land to the federal government will not be extinguished by ten years non-user, nor shall it be governed by the other codal provisions relative to prescription. It has been the policy of -our Supreme Court that if an owner of a servitude fails to take advantage of it and use it for a period of ten years, the law will consider it abandoned, and the servitude will be extinguished, Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389. This is consistent with the general policy that elements of commerce should not be tied up for long periods of time. Act 315 creates either a separate mineral estate or a perpetual servitude. Both are foreign to prior concepts of Louisiana mineral law, Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 756, 91 So. 207; Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623.
“Louisiana’s prescription laws are the legal expression of public policy. If the Legislature decides to change the general land policy of the state, the legality of such legislation cannot be questioned as long as no state or federal constitutional provision is infringed. The wisdom of such changes, however, is subject to inquiry.
“The justification for this relaxation of the general policy lies in the desire to enable the federal government more easily to acquire land for various governmental projects, United States v. Nebo Oil Co., Inc. [D.C.], 90 F.Supp. 73. Prior to World War II the federal government bought large tracts of land in Louisiana as well as in other states. The principal value of much of this land was in the possibility of mineral production. Understandably, the landowners were unwilling to sell their land cheaply unless they could reserve the mineral rights for longer than ten years. Counsel representing the Government were then of the opinion that the Louisiana law of prescription did not apply to the federal government. Whitney National Bank of New Orleans v. Little Creek Oil Co., 212 La. 949, 33 So.2d 693. Relying on this advice, the contracting parties made stipulations for mineral reservations of longer than ten years in many of the sales of land to the United States. To facilitate these purchases the Louisiana Legislature passed Acts 68 and 151 of 1938, which reflected the position taken by the federal authorities that the prescription of mineral servitudes would not operate in favor of the United States. These acts were repealed and superseded two years later by Act 315 of 1940.
“In 1950 the Legislature passed an act (Act 169 of 1950) providing a forty year prescription for non-user of mineral reservations in deeds of land sold to the state for the establishment of the Anacoco-Prairie State Game and Fish *80 Reserve. Again the purpose was undoubtedly to encourage the inexpensive acquisition of land for a public project. However, the act does seem to relax established principles of public policy.”
It is not necessary to discuss the detailed character of the development and production required for the periodic extension of the reserved servitude, since it is conceded that neither the vendor of the United States, nor any of the vendor’s assignees, complied therewith on or before the primary terminal date of April 1, 1945. The initial development and production was in 1949 by defendants, as assignees of the United States.
LSA-Civil Code, Art. 821 gives the absolute right to contract with respect to the duration of a servitude, viz.:
“Servitudes are also extinguished when they have been established for a certain time only, or under a condition that in a certain event they shall cease; for when the time expires, or the event takes place, the servitude becomes extinguished of right.”
LSA-Civil Code, Art. 783, subd. 6, to the same effect, states that servitudes are extinguished by the expiration of the time for which granted, or by the failure to perform a condition attached to the servitude.
In Hodges v. Norton, 200 La. 614, 8 So.2d 618, our Supreme Court recognized the right to limit the duration of a mineral servitude by contract, and sharply differentiated between the contractual limitation and the statutory prescription of ten years for non-user, in the following language:
“Thus, in the instatnt case, when A. J. Hodges released in favor of Selby the fifteen-year contractual limitation, his waiver, which inured to the benefit of Norton, had the effect of continuing the life of the servitude for an indefinite period — subject, however, to the prescription established, by law.” 8 So.2d at page 623.
Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389, also recognized the right to stipulate a contractual limitation of term, as follows:
“ * * * The time limit of fifteen years, within which the Bodcaw Lumber Company or its successors or assigns, might have extracted and removed the oil and gas from the land, was inserted in the contract, not for the purpose of extending the time within which the right might be enjoyed, but for the purpose of limiting the time in which it might be enjoyed.” 120 So. at page 390.
Standard Oil Co. of La. v. Futral, 204 La. 215, 15 So.2d 65; Haynes v. King, 219 La. 160, 52 So.2d 531; Wise v. Watkins, 222 La. 493, 62 So.2d 653.
Counsel for defendants rely heavily upon the case of United States v. Nebo Oil Co., 5 Cir., 190 F.2d 1003. The Nebo case was decided by a federal court and is easily distinguished from the case here. In the cited case, the vendor of the United States had previously parted with the minerals to other parties, hence the United States had only a hope that the mineral owner would abandon the minerals by non-user for ten years, and that the State, meanwhile, would not extend the prescriptive period beyond the existing ten-year period. The United States had no contractual or proprietary interest in the minerals, just, as stated above, the hope.
In this case the United States not only has an expressed contractual right to obtain the minerals upon the default of its vendor to perform an affirmative act in the development and production of such minerals by a fixed date, but also an interest in the development and production of the minerals, since it was to receive a portion of the fruits of such production.
The statute does not prohibit the United States from acquiring minerals, hence the contractual agreement between the United States and its vendor that the *81 former would acquire the minerals, under certain specified conditions, was not in contravention of a prohibitory law, and, therefore, void ab initio. LSA-C.C. Art. 11 clearly states the rule, viz.:
“Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
“But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good.”
The Nebo case does not hold that Act 315 could impair an ex contractu right of the United States, but simply that the prescription laws of Louisiana, upon which alone the United States could rely, were statutes of limitation, created no contract right, and were subject to modification or repeal at the will of the state, per the following language [190 F.2d 1010]:
“ * * * All that Bodcaw (the Government’s grantor) had which it could sell to the United States was the timber land itself. That was the obligation of the contract and it remains unimpaired. By virtue of its ownership of the .land appellant could merely hope that the outstanding servitude might lapse but this hope or expectancy was born of a statute of prescription based on the then existing public policy of the state as declared by its legislature. It was not a part of the obligation of the contract. It was wholly given by law and the power that gave it could increase, diminish, or otherwise alter, or wholly take it away without violating the Federal Constitution.”
Recognizing this distinction, the Court, in the last paragraph of the Nebo case said (as to Act 315), “It does not state or imply that the reserved rights shall be increased or varied, but only that they shall not be lost by prescription.”
Since the right retained by plaintiff-vendor was to expire on a fixed date (subject to renewal or extension only if certain acts be performed prior to that date), such a stipulation is a resolutory or dissolving condition (LSA-Civil Code, Art. 2043), failure to perform which prior to the contractual date results in its termination. Zemurray v. Boe, 235 La. 623, 105 So.2d 243.
Our jurisprudence leaves no doubt that a statutory prescription, not made contractual by the parties, can be repealed, extended or shortened, provided such prescription has not already accrued, and a reasonable time given for the exercise of the right affected.
The statute does not prohibit the United States from acquiring mineral interests ex contractu. A fair and reasonable interpretation is that the statute is the law between the parties only in the absence of a contractual limitation less than the statutory period. When limited by contract, such limitation then becomes the law between the parties, not the statute.
Statutes in derogation of common rights (one of which is the freedom of contract), must be strictly construed, and are not to be extended by implication. State ex rel. Maitrejean v. Demarest, 229 La. 300, 85 So.2d 522; Gamburg v. City of Alexandria, La.App., 85 So.2d 276.
No general words in a statute will divest the government of its right or remedies. United States v. Herron, 20 Wall. 251, 87 U.S. 251, 22 L.Ed. 275.
Plaintiff contends further that the holding in LeBlanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855, 857, viz.:
“Moreover, counsel for the plaintiff overlook the fact that all contracts of lease with respect to the development and production of minerals in this state must, of necessity, be subject to the police power exercised in protecting these natural resources, and that *82 any provisions in our law with respect thereto form a part of these lease contracts the same as though written there-¿2^ ^ ^ ^
means that under its police power the State can permanently change, alter or modify contract rights between the parties. We disagree. It simply means that all contracts regarding the development and production of minerals, as to time, place, quantity, etc., are subject to the exercise of the State’s police power to preserve its mineral resources and prevent waste; not that the State can change vested contract rights as to ownership
To hold such would violate LSA-Const. Art. 4, § IS, prohibiting the legislature from passing any law that impairs the obligation of contracts.
In the exercise of the police power, the State may require pooling and unitizing, and restrict production to such areas. By so doing, owners of minerals may be prevented from exercising their servitude, even though the time for which is limited ex contractu. The failure to exercise the mineral servitude, under these circumstances, would not result in its loss. The only effect would be to interrupt the accrual of the ex contractu prescription during such period. LSA-C.C. Art. 792; Adger v. Oliver et al., La.App., 66 So.2d 625, and cases therein cited. There is no contention here that the State, or any of its agencies, prevented' vendor of the United States from exercising its mineral servitude.
We are not called upon to decide whether or riot the State can deny the United States the right to acquire minerals in Louisiana, but only whether Act 315 of 1940 applies to mineral reservations by a vendor of the United States where the mineral reservation is of specific ex con-tractu limitation.
Plaintiff cites Ray v. Liberty Industrial Life Ins. Co., La.App., 180 So. 855, as holding that a statute regarding prescription was applicable to both statutory and contractual prescription.
The statute involved regulated only the method of judicial interruption of both contractual and statutory prescription, providing that the mere filing of a suit, without the necessity of citation, in a court of competent jurisdiction was sufficient. The statute in no manner sought to shorten or abolish any prescriptive rights, contractual or statutory. Procedural and remedial statutes are always given a liberal construction.
Therefore, the judgment of the District Court is reversed, and it is now declared and decreed that Act 315 of 1940 (LSA-R.S. 9:5806) does not apply in this case since the mineral reservation is of specific ex contractu duration, less than the prevailing statutory period of ten years for non-user.
Judgment reversed and rendered.