HARDY, Judge.
Plaintiffs instituted this action in jactitation which, after disposition of certain preliminary pleadings, was converted into a petitory action by the answers of defendants asserting the ownership of an undivided one-half interest in and to a certain described forty-acre tract of land located *626 in Bossier Parish, Louisiana. During trial plaintiffs filed a plea of ten year acquisitive prescription, which was sustained and there was judgment recognizing plaintiffs as owners of the property in question. Defendants prosecuted an appeal to the Honorable the Supreme Court which refused jurisdiction on the now well established grounds that the value of the property was not affirmatively shown and that jurisdiction could not be conferred by consent of the parties, evidenced by a stipulation of counsel; Adger v. Oliver, 222 La. 793, 64 So.2d 6. Pursuant to this holding the appeal was transferred to this court.
The pertinent facts which were established on trial show that by deed of date October 31, 1904, one Isaiah Marshall acquired the Northwest Quarter of Northeast Quarter of Section 12, Township 20 North, Range 13 West, Bossier Parish, Louisiana, by purchase on terms of credit from J. E. Adger. Though the deed is silent as to the marital status of Marshall he was in fact married at the time to Sarah Oliver, who died without descendants on March 15, 1915, but was survived by her father, Nick Oliver, Sr., who in turn died in 1916, leaving as his heirs the defendants (plaintiffs in the converted action) in this suit. We point out the fact that the Barnsdall Oil Company and Sohio Petroleum Company, though holding mineral leases from plaintiffs, were interposed as party defendants by reason of the fact that they also are lessees under instruments of lease executed by certain of the principal defendants. However, these corporations may be considered as nominal parties and their interests have no material bearing upon the ultimate disposition of this case.
By instrument of date May 15, 1936 Isaiah Marshall sold and conveyed the described property to the plaintiffs, J. M. Adger and H. Emery Galbraith, which deed contains the following declaration:
“Be It Known, That this day before me, ., Notary Public in and for the said parish, duly commissioned and sworn, came and appeared Isaiah Marshall, husband of Adeline Marshall, a resident of Caddo Parish, Louisiana, the pioperty herein conveyed having been purchased by this vendor as a single man, before his marriage to his present wife, who declared that he does by these presents Grant, Bargain, Sell, Convey and Deliver * *
One other significant fact in conection with these transactions developed on trial of the case when Marshall testified that although he was married to Sarah Oliver at the time he received the deed to the property he had contracted for its purchase prior to the marriage.
By Order No. 114 of date April 23, 1946, the Commissioner of Conservation of the State of Louisiana defined the “Benton Field”, together with certain producing sands therein, decreed the development and operation of said field as a cycling and pressure maintenance unit and named the Barnsdall Oil Company as the operator of said field. The effect of the order was to integrate all the properties defined as lying within the field which included the property here involved, thereby forming a single unit or pool for the purpose of gas production. With the detailed terms, conditions, provisions and regulations of the order we are not here concerned.
Plaintiffs’ petition was filed April 27, 1948. As above noted the heirs of Sarah Oliver Marshall, and parties holding under them as lessees of the oil, gas and mineral rights and as grantees of mineral or royalty interests, were named parties defendant. Plaintiffs prayed that defendants be ordered to disclaim title to the property or to assert same; for the cancellation of numerous described instruments from the records of the Conveyance Office of Bossier Parish, and for general relief. The defendants, Barnsdall Oil Company and Sohio Petroleum Company, filed a pro forma answer asserting that they were without any real interest in the litigation and praying to be relieved of any liability or responsibility therein. The other defendants, the real parties at interest, filed an answer admitting the slander and asserting title to the undivided one-half community interest alleged *627 to have been owned by Sarah Oliver Marshall.
The issues on appeal have been admirably simplified and succinctly stated in brief of counsel for defendants, who complain of error of the trial court in sustaining the plea of prescription of ten years acquirendi causa on the following grounds:
“First: The plaintiffs were not in good faith in acquiring the property as required by Articles 3478, 3479, 3480 and 3451 of the [LSA] Civil Code, but on the contrary they were in legal bad faith, (a) because they did not accept the title tendered them by Isaiah Marshall, but instituted their own search or examination of the title, and are thereby charged with such information as the true facts would disclose, and, (b) they had actual knowledge that this property belonged to the community of acquets and gains which had theretofore existed between Isaiah Marshall and his deceased wife, Sarah Oliver Marshall, and hence plaintiffs knew that Isaiah Marshall could not convey a fee title thereto.
“Second: Plaintiffs did not have the possession of the property as required by Articles 3478, 3479 and 3487, since Order No. 114, issued by the Commissioner of Conservation of the State of Louisiana, having become effective on April 23, 1946, it thereby ousted these plaintiffs’ possession of the mineral rights to the property, Barnsdall Oil Company, the designated ‘Operator’ thereby going into possession of the mineral rights.”
It is obvious that the first point involves solely the resolution of a question of fact and the second proposition concerns exclusively a question of law. If either of these contentions can be sustained it follows that appellants’ position is well taken.
Necessarily the elements of acquisition in good faith and possession are essential to the validity of the plea of prescription acquirendi causa under Articles 3478, 3479, 3487 and 3451 of the LSA-Civil Code.
Appellants’ attack upon plaintiffs good faith is predicated upon the contention that they were cognizant of the facts in connection with the marital status of Isaiah Marshall at the time of his purchase by deed of October 31, 1904, from J. E. Adger, the father of plaintiff, T. M. Adger. Con-cededly the nature of the bad faith in this instance falls in the category of legal bad faith. That is, appellants urge that the plaintiffs purchased in error of law in that they considered and were advised that the property did not fall into the community of acquets and gains existing between Marshall and his wife, Sarah Oliver, at the time of the execution of the deed of conveyance for the reason that Marshall had contracted for the purchase of the property prior to his marriage. In other words, the burden of this point is to the effect that plaintiffs were familiar with the facts but were nonetheless in error as to the legal principles which were applicable under the facts.
In support of this conclusion it is urged on behalf of appellants that the attorney who was consulted by plaintiffs and who drew the deed which was executed in their favor by Marshall testified on trial as follows :
“Q. Mr. Lee, based on the statement that Isaiah Marshall made at the time, which is written in the deed, that he acquired the property while a single man, is it your opinion that he would have had a good title? Would that have been your presumption? A. It would. And Isaiah Marshall said something that makes me think he had it. He said he bought the property under contract as a single man, and he did not get his deed until after he married. Which makes me think he acquired this land as a single man.”
Standing alone and without the constructive benefit of other testimony and of surrounding facts and circumstances, we concede that this position would be thoroughly tenable. However reference to other testimony and the facts thereby established definitely preponderates against *628 the acceptance of the construction which is sought to be applied by appellants.
We think it is conclusively established that the plaintiffs, Adger and Galbraith, accompanied .by Isaiah Marshall, went to the office of Mr. R. H. Lee, attorney at law in Benton, Louisiana, for the purpose of procuring the drawing of the deed of conveyance from Marshall to plaintiffs. There is some question as to why this was necessary in view of the fact that the deed was subsequently passed before a notary in Shreveport, but we cannot find any suspicious circumstance which attaches by reason of such question. In any event Mr. Lee was positive in his testimony that the statement which is first above quoted setting forth the marital status of the grantor, Marshall, was obtained in this conference either in the nature of a direct statement from Marshall or a statement by Mr. Adger made in Marshall’s presence. Lee testified he had no recollection of having examined the title to the property. This testimony was completely in accord with testimony on the same points as given by Adger, Marshall and Galbraith.
In the light of all of the facts as established by the vast preponderance of the testimony we are firm in the belief that the statement made by Mr. Lee, above quoted, which is so seriously relied upon by appellants, was inspired by the testimony of Isaiah Marshall on the trial of the case and was not in any sense intended to be a recital of a statement by Marshall at the time of the conference in Mr. Lee’s office concerning the confection of the deed of conveyance. Clearly this must have been the conclusion reached by our distinguished brother of the trial court. Under this concept of fact, which we think is amply sustained by the whole of the testimony, it follows that appellants’ first assignment of error must fall.
Turning to a consideration of appellants’ interpretation of the effect of Order No. 114 of the Commissioner of Conservation, we note the statement of their position that the order in question had the effect of “fixing the ownership of the mineral estate in this property as of January 1, 1946.” Upon this premise it is argued that the running of prescription acquirendi causa was interrupted by operations conducted in the Benton Field, or if not interrupted that it was suspended under the doctrine epitomized in the maxim “contra non valentem agere non currit prescriptio.”
As we conceive the proposition appellants argue that the unitization order had the effect of freezing all rights in and to the minerals in the properties concerned as of the moment of issuance of said order.
We are utterly unable to agree with this interpretation and application. We have given thorough consideration to the very able and persuasive brief of learned counsel for appellants and similarly we have been impressed with the force of the arguments urged by the distinguished opposing counsel.
In the first place we are not convinced, even in the slightest degree, that the order of the Commissioner of Conservation had or could have had any possible effect upon the contractual rights of individuals. There is nothing in the order which changes, alters or affects rights of ownership either in the surface or in the minerals in the properties designated in the order. Nor do we conceive how the order can be construed to restrict, circumscribe, limit, or, least of all, prevent free transaction and negotiation by owners of property rights and interests, in the absence of any effect which might result from the actual mineral development as a factor to be considered.
We are further impressed with the considered conclusion that the maxim above quoted, which is strongly relied upon by counsel, is without any application whatsoever under the facts of the instant case. There is no showing of any nature that these defendants-appellants were unable to bring an action. And, certainly, the issuance of the Commissioner’s order had not the slightest effect upon their right to prosecute any action which involved their claims to an interest in property embraced within the limits defined by the order.
*629 We think the proposition has been completely determined by the recent holding of the Supreme Court in Arkansas-Louisiana Gas Company v. Southwest Natural Production Co., 221 La. 608, 60 So.2d 9, 10. A serious contention somewhat similar to that which we here consider was presented by the argument that an order of the Commissioner of Conservation establishing drilling units affected the entire structure of the mineral ownership of the lands included in such units. The proponents of this proposition relied upon the same line of decisions which have been cited in brief of appellants’ counsel in the matter before us.
In deciding the point the Supreme Court observe in the opinion by Mr. Chief Justice Fournet:
“While it is true that certain language in the cases above cited would seem to lend support to the plaintiff’s theory, an examination of these opinions discloses they involved the effect of unitization orders on the contractual rights of the lessor and lessee only in so far as the division, 'Use, or development of the mineral servitude created was concerned, and that the effect of such orders on the structure of the mineral ownership, as such, or, more specifically, on the contractual rights of the parties with respect to the royalty due and the proper method of computing and paying it, was never at issue. They are not, therefore, controlling. In fact, they are authority for the proposition that private contractual rights in these leases are only superseded when they are in conflict with the valid orders of the Commissioner of Conservation, i. e., when the order is a conservation measure, pure and simple. Everett v. Phillips Petroleum Co., 218 La. 835, 51 So.2d 87, and the authorities therein cited.” (Emphasis supplied.)
We think it must be borne in mind with respect to the instant case that the issues do not involve any question of development, use, production or operation of minerals. The only issue here concerned is the ownership of an interest in real property which carries with it, perforce, the ownership of mineral rights. Under this circumstance we cannot conceive how the rights of ownership of the respective contending parties has been affected by the conservatory order issued by the Commissioner of Conservation. It follows as an inescapable conclusion that this point of opposition and alleged error cannot be maintained.
For the reasons assigned the judgment from which appealed is affirmed at appellants’ cost.
McINNIS, J., recused.