STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 10-1307


NEUMIN PRODUCTION COMPANY, ET AL.

VERSUS

TIGER BEND, LTD., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 70481-A
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**BILLY HOWARD EZELL**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.


**AFFIRMED.**

**Frederick Bernard Alexius**
**George I. Fine**
**Provosty, Sadler, deLaunay**
**Fiorenza & Sobel, APC**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Defendant/Appellant:**
**The Mikell Group**

**Marcus L. Fontenot**
**Fontenot and Associates**
**P.O. Box 69**
**Ville Platte, LA 70568**
**(337)363-2388**
**Counsel for Defendant/Appellant:**
**The Mikell Group**

**Christopher Brent Coreil**
**P. O. Drawer 450**
**Ville Platte, LA 70586**
**(337) 363-5596**
**Counsel for Defendant/Appellee:**
**Tiger Bend, Ltd.**

**Kyle Patrick Polozola**
**James H. Dupuis, Jr.**
**Dupuis & Polozola, LLC**
**P. O. Box 2698**
**Lafayette, LA 70502**
**(337) 235-2232**
**Counsel for Plaintiffs/Appellees:**
**Neumin Production Company**
**Guardian Oil Gas, Inc.**

**EZELL, JUDGE.**

Neumin Production Company and Guardian Oil & Gas, Inc. instituted this concursus proceeding to determine who is the owner of royalty proceeds of production from a well located in Evangeline Parish. Two separate leases are at issue in this proceeding. One lease was executed by Tiger Bend, Ltd., who is the owner of the surface of the land. The other lease was executed by several individuals referred to as the Mikell Group,[1] who claim to have a mineral servitude affecting the subject tracts. Both Tiger Bend and the Mikell Group claim to be entitled to the proceeds deposited in the registry of the court.

## FACTS

At issue in this case is the ownership of minerals produced from a well known as the Foreman No. 1 well located in Evangeline Parish. There is no dispute that Tiger Bend is owner of the property. The Mikell Group claims that it owns the right to the minerals through a mineral servitude created by an act of partition and exchange in 1983.

The Mikell Group's ownership began with the liquidation of two companies, the Haas Land Company, Ltd. and the Haas Investment Company, Inc. The shareholders of the companies at the time of the liquidation became the owners of the lands formerly owned by the companies. The Haas Land Company was liquidated in 1979, and its shareholders at that time included: Succession of Maccie H. Harrison, Montez Henning Haas, Montez Haas Constant, Lulu H. Haas, Joseph M. Haas, Nancy M. Carruth, and Franklin H. Mikell. Later, Franklin H. Mikell and Nancy M. Carruth inherited the Succession of Maccie H. Harrison's portion. The Haas Investment

---

[1] The Mikell Group consists of Nancy Mikell Carruth, Donna Tebow Taylor, William Mikell Tebow, Franklin H. Mikell, Minnie O'Shee, Franklin O. Mikell, Martha Mikell Abshire, and Melinda L. Mikell.

1

Company was liquidated on November 1, 1983. In addition to the same shareholders as the Haas Land Company, the Haas Investment Company had the following additional shareholders: William David Constant, Samuel D. Haas, Joseph M. Haas, Jr., Suzanne Haas McCann, Thomas B. Haas, Katherine L. Haas, Donna Tebow Taylor, William Mikell Tebow, Minnie O. Mikell, Franklin O. Mikell, Martha E. Mikell, and Linda Mikell Wilder. Franklin H. Mikell and Nancy M. Carruth were also individual shareholders in their own right in Haas Investment Company.

On November 1, 1983, an "ACT OF PARTITION, EXCHANGE AND AGREEMENT" was entered into by all of the above parties for the purpose of partitioning and exchanging their undivided interests in certain properties. The heirs of W.D. and Hattie Haas were also included in the partition agreement. The Mikell group claims that this instrument created a single mineral servitude of multiple contiguous tracts of land so that production on a well six-and-two-tenths a mile away in Avoyelles Parish interrupted the running of prescription on the mineral servitude where the Foreman well is located.

Tiger Bend filed a motion for summary judgment contending that there are multiple servitudes and that any mineral rights reserved in the act of partition were extinguished by prescription. A hearing on the matter was held on April 23, 1010. Judgment was signed on September 9, 2010, granting Tiger Bend's motion for summary judgment and declaring it the owner of the all funds deposited in the registry of the court in addition to all future royalties. The Mikell Group appealed the judgment.

## SUMMARY JUDGMENT

Appellate courts review motions for summary judgment de novo to determine whether any genuine issue of material fact exists and whether the mover is entitled

to judgment as a matter of law. La.Code Civ.P. art. 966(B). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." *Id*. The mover bears the initial burden of proof to show that no genuine issue of material fact exists. La.Code. Civ.P. art. 966(C)(2).

"Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, pp. 9-10 (La. 4/23/10), 35 So.3d 1053, 1059.

## MINERAL SERVITUDE

The Mikell Group contends that they have an existing mineral servitude created in the 1983 act of partition which covers the property in question entitling them to the funds deposited in the registry of the court. Specifically, the Mikell Group contends that they are the owners of single mineral servitude that was created when the lands were partitioned and formed a contiguous tract of land. The Mikell Group claims that production on a well in Avoyelles Parish interrupted prescription on the single mineral servitude which covers the production at issue on the well in Evangeline Parish. As the owner of the surface of the land, Tiger Bend argues that the servitude has prescribed, and that it is entitled to the funds.

"[T]o constitute a single tract of land the lands must be so situated that one may pass from one part to the other without passing over the lands of another." *Lee v. Giauque*, 154 La. 491, 493, 97 So. 669, 670 (1923); *Energy Dev. Corp. v. Quality Envtl. Processes, Inc.*, 98-1125 (La. App. 5 Cir. 5/19/99), 734 So.2d 965.

3

"[A] mineral servitude is the active right to explore for and produce minerals, extracting and reducing them to possession and ownership. *Horton v. Mobley*, 578 So.2d 977, 983 (La.App 2d Cir.), *writ denied*, 582 So.2d 1310 (La.1991). "[A] servitude is a dismemberment of title insofar as it creates a secondary right in the property that is exercised separately from the landowner." *Id*. "A mineral servitude also entails 'executive' rights." *Id.*

A mineral servitude prescribes in ten years as a result of nonuse. La.R.S. 31:27(1). "Prescription of nonuse of a mineral servitude commences from the date on which it is created." La.R.S. 31:28. "The prescription of nonuse running against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals." La.R.S. 31:29.

"A single mineral servitude is created by an act that affects a continuous body of land although individual tracts or parcels within the whole are separately described." La.R.S. 31:63 "An act creating mineral servitudes on noncontiguous tracts of land creates as many mineral servitudes as there are tracts unless the act provides for more." La.R.S. 31:64. "The owners of several contiguous tracts of land may establish a single mineral servitude in favor of one or more of them or of a third party." La.R.S. 31:66. "Co-owners of land constituting a continuous whole may partition it and reserve a single mineral servitude in favor of one or more of them." La.R.S. 31:67. "A single mineral servitude may not be created on two or more noncontiguous tracts of land." La.R.S. 31:73.

In the 1983 partition act, the parties combined all the land that they owned. When Haas Land Company and Haas Investment Company were liquidated, their shareholders became the owners of the land in proportion to their ownership in the companies. Therefore, before the 1983 partition, the lands were owned by different

4

owners depending on in what companies they owned shares. In the 1983 act of partition the lands were brought together and were partitioned and exchanged. Tiger Bend's ownership of the land at issue was based on this act of partition.

A conveyance of property includes all incidents of ownership including mineral rights that are not expressly reserved. *Hayden v. Phillips*, 94-130 (La.App. 1 Cir. 11/10/94), 646 So.2d 1014, *writ denied*, 95-244 (La. 3/24/95), 651 So.2d 291.

The pivotal case on the creation of a single servitude as opposed to multiple servitudes when land is partitioned is *Whitehall Oil Co. v. Heard*, 197 So.2d 672 (La.App. 3 Cir.), *writ refused,* 250 La. 924, 199 So.2d 923 (1967). In discussing the principles of a mineral servitude, Justice Tate, writing for this court, stated:

> [A] landowner cannot create a single servitude or mineral royalty right on two or more non-contiguous tracts; and if this is attempted by a single instrument, there are nevertheless as many servitudes or royalty interests as there are non-contiguous tracts of land. On the other hand, there is no limitation in the area or configuration of a contiguous mineral interest.
>
> . . . [O]wners of land may create a single mineral servitude or royalty so long as they own the lands in question and so long as the tracts in question are contiguous and form a single, continuous body of land. Determination of whether a landowner reserving or granting mineral servitude or mineral royalty rights intends to create a single servitude or royalty interest or instead multiple interests is, therefore, dependent upon construction of particular conveyances . For example, it has been held that two separate deeds by the same landowner conveying mineral interests in two contiguous tracts of land create separate mineral servitudes although acquired by the same mineral owner. Thus, whether the landowner intends to reserve a single or multiple interests by a particular reservation must similarly depend upon principles of contractual construction.

*Id*. at 675-76 (citations omitted) (footnote omitted).

## PARTITION

In the 1983 partition agreement, there were three separate conveyances of property. The first conveyance was a transfer of property from Haas-Constant Group

to Mikell-Carruth Group. The second conveyance was a transfer of property from the Mikell-Carruth Group to Haas-Constant Group. The third, and final conveyance, was from the Mikell-Carruth Group to Joseph M. Haas and Montez Haas Constant.

One of the initial paragraphs in the partition agreement (emphasis supplied) provides:

> WHEREAS, the said parties do desire to partition and exchange certain of their undivided interests to the end that the Haas-Constant Group (as hereinafter identified) receives certain properties or interests in properties, and the Mikell-Carruth Group (as hereinafter identified) receives certain other properties and interests in properties, *in each case subject to complete mineral reservation*;

Paragraph VIII further provides:

> All parties transferor in this Act declare, and all parties transferee of any interest in property herein recognize, that each conveyance herein effected is made by the transferor with full and complete reservation of all oil, gas and other fugacious or similar mineral, of whatsoever nature, located in, on or under any property transferred. It is not the intention of this mineral reservation to cover or affect any sand, gravel, lignite, ore or other solid minerals.

The usual scenario in the cases that have been before the courts is one in which property that is co-owned is partitioned with each co-owner receiving a tract in full ownership. The present situation is different in that the co-owners of the properties that were partitioned were not all the same co-owners of each contiguous tract of land that was partitioned. When the Haas Land Company and the Haas Investment Company were liquidated, their properties were distributed to the shareholders. Eighteen people owned the properties of the Haas Investment Company, and eight people owned the properties of the Haas Land Company. The only two parties who were members of both the Haas Land Company and the Haas Investment Company properties which were the subject of the partition agreement were Nancy Carruth and Franklin H. Mikell.

6

It is clear to this court that there would be no necessity to reserve the minerals if the parties intended that a single servitude be created over all the properties to the partition. Obviously, the parties intended to reserve the minerals in the same proportion on any property they owned prior to the partition by inserting the reservation language in the partition agreement.

With the reservation of the minerals prior to combining the lands for partition, the owners of the minerals on each piece of property are different from the owners of the surface of the property after the partition. Different tracts of land had different owners prior to the partition; therefore, different mineral servitudes were created on each tract of property that was part of the partition.

Nancy Carruth and Franklin Mikell point out that they each had an undivided ownership interest in all of the lands when the reservation was made. They argue that their reservation of the minerals in the properties created a single mineral servitude over all the property in their favor.

While Ms. Carruth and Mr. Mikell may have an ownership interest in each mineral servitude on each tract or property, this does not create a single mineral servitude. They are co-owners in each separate mineral servitude with the different parties who had an interest in a particular tract before the partition agreement. The effect of the reservation of the minerals was to create multiple mineral servitudes.

We find that there is no question of material fact that prescription on the mineral servitude on the tract of land in question had not been interrupted by the operation of the well in Avoyelles Parish, six-and-two-tenths miles away from the well in question in Evangeline Parish, since there was no single mineral servitude. The mineral servitude created in 1983 prescribed in 1993, and Tiger Bend is the owner of the minerals on the property as the owner of the surface of the property.

7

The granting of the motion for summary judgment filed by Tiger Bend is affirmed.

Costs of this appeal are assessed to the Mikell Group.

**AFFIRMED.**