# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

**2022 CA 0004**
**and 2021 CW 1267**

## FLORIDA GAS TRANSMISSION COMPANY, LLC

### VERSUS

## TEXAS BRINE COMPANY, LLC, ET AL.

*Judgment Rendered:*   **AUG 0 3 2022**

**Appealed from the**
**23rd Judicial District Court**
**In and for the Parish of Assumption**
**State of Louisiana**
**Docket Number 34,316**

**Honorable Thomas J. Kliebert, Jr., Judge Presiding**

\* \* \* \* \* \* \*

James M. Garner
Leopold Z. Sher
Peter L. Hilbert, Jr.
Darnell Bludworth
Jeffrey D. Kessler
Stuart D. Kottle
New Orleans, Louisiana

Robert Ryland Percy, III
Gonzales, Louisiana

Royce I. Duplessis
New Orleans, Louisiana

Travis J. Turner
Gonzales, Louisiana

Attorneys for 1st Appellant/Defendant
Texas Brine Company, LLC

Martin A. Stern
Leigh Ann Schell
Raymond P. Ward
New Orleans, Louisiana

Attorneys for 2nd Appellants/Defendants
Occidental Chemical Corporation,
Occidental Petroleum Corporation, and
OXY USA, Inc.

Kathy Patrick
Laura Kissel Cassidy
Caitlin Halpern
Samuel W. Cruse, III
Houston, Texas

Richard Hymel
Lafayette, Louisiana

Brad Brian
Bethany Kristovich
Daniel Levin
Los Angeles, California

Roy C. Cheatwood          Attorneys for Appellee/Defendant
Kent A. Lambert           Legacy Vulcan, LLC
Adam B. Zuckerman
Colleen C. Jarrott
Matthew C. Juneau
Leopoldo J. Yanez
Lauren Brink Adams
New Orleans, Louisiana

\* \* \* \* \* \* \*

**BEFORE: THERIOT, WOLFE, AND HESTER, JJ.**

**THERIOT, J.**

Texas Brine Company, LLC appeals a summary judgment declaring a lease, and other interdependent contracts, extinguished by confusion. In its answer to this appeal and related request for supervisory review, Legacy Vulcan, LLC challenges the trial court's findings as to the effects of those extinguished contracts. Occidental Chemical Corporation, Occidental Petroleum Corporation, and Oxy USA, Inc., challenge the summary judgment's lack of a reservation of their right to arbitrate their contractual disputes with Texas Brine Company, LLC including confusion of the lease at issue.[1] For the following reasons, we affirm the trial court's December 9, 2020 judgment finding that four certain contracts were extinguished due to confusion or by operation of law and dismissing all causes of action based on claims arising from those contracts, after the date of confusion; and we affirm the trial court's August 13, 2021 judgment finding that causes of action based on claims arising from the four aforementioned extinguished contracts are still viable for litigation.

---

[1] This court has previously considered and decided the arbitration issues Occidental Chemical Corporation, Occidental Petroleum Corporation, and Oxy USA, Inc. (collectively the Oxy Parties) raise in their appeal. See **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2018-1391 (La. App. 1st Cir. 5/3/21), 324 So.3d 1090, 1094, writs denied, 2021-00770, 2021-00773 (La. 10/19/21), 326 So.3d 255 & 260, citing to **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-1249 (La. App. 1st Cir. 12/30/20), 317 So.3d 715, 745, writs denied, 2021-00382, 2021-00386 (La. 6/8/21), 317 So.3d 323 (wherein this court held that all claims between the Oxy Parties and Texas Brine be submitted for determination by the arbitration panel); and **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2018-0075 (La. App. 1st Cir. 7/1/19), 285 So.3d 1093, 1101, writs denied, 2019-01124 (La. 7/17/19), 227 So.3d 1180, 2019-01405 (La. 11/12/19), 282 So.3d 225 (wherein this court held that the determination of the issue of confusion of contracts as between the Oxy Parties and Texas Brine was appropriate for the arbitration panel rather than the trial court). Both of these rulings are final and definitive judgments, as the Louisiana Supreme Court has denied writs of certiorari; therefore, this is the law of the case and there is no need to reexamine these arbitration issues. See **Slaughter v. Louisiana State Employees' Retirement System**, 2020-0881 (La. App. 1st Cir. 3/25/21), 322 So.3d 839, 845, writ denied, 2021-00567 (La. 6/22/21), 318 So.3d 706, cert. denied, 142 S.Ct. 775 (2022) (the law of the case doctrine embodies the principle that an appellate court generally does not revisit its own ruling of law on a subsequent appeal in the same case). For these same reasons, Texas Brine's motion to dismiss the Oxy Parties' appeal is denied as moot.

## FACTS AND PROCEDURAL HISTORY

This litigation arises out of a sinkhole that developed from the collapse of a salt mine cavern in Assumption Parish on or about August 3, 2012. The present matter involves contractual claims between Texas Brine Company, LLC, (Texas Brine) which operated the brine production well, and Legacy Vulcan, LLC, (Legacy Vulcan) the previous owner of the Geismar Plant which utilized the brine.[2]

The contracts involved in this matter date back to 1975 when Hooker Chemicals & Plastics Corp., predecessor in interest to Occidental Chemical Corporation (Occidental), was the owner of the 40-acre tract of land located over the Napoleonville Salt Dome, and entered into a Salt Lease with Texas Brine for the mining of salt. In 1976, Texas Brine and Legacy Vulcan executed a contract entitled, "Assignment of Salt Lease," wherein Legacy Vulcan took on the role as lessee of the original Salt Lease. Texas Brine and Legacy Vulcan also entered into two additional contracts, the Construction Contract and Facilities Lease (Facilities Lease), calling for Texas Brine, as lessor, to construct improvements and a pipeline on the salt lease premises in order to produce and transport brine from the salt lease property to the Geismar Plant; and the Operating and Supply Agreement (Operating Agreement) stating that Texas Brine was to operate the facilities leased to Legacy Vulcan pursuant to the Facilities Lease. The parties amended and restated both the Operating Agreement and the Facilities Lease in their entirety in 2000. Important to this appeal, both the Amended Facilities Lease and Amended

---

[2] Legacy Vulcan was previously known as Vulcan Materials Company, but will be referred to as Legacy Vulcan throughout this opinion.

Operating Agreement contained clauses tying the term of each of these contracts to the term of the Salt Lease.[3]

Through a series of transactions, culminating in 2008, Occidental acquired Legacy Vulcan's interest in the Salt Lease and all of the ancillary contracts reliant thereon. As a result of those transactions, Occidental was both lessor and lessee of the Salt Lease when the sinkhole emerged in 2012.

The sinkhole spawned numerous lawsuits, including this one, instituted by a company owning and operating a pipeline damaged by the sinkhole. The claims asserted in this suit include damages, indemnification, and attorney's fees by Texas Brine against Legacy Vulcan based in contract.

In June 2017, Texas Brine filed motions for partial summary judgment in this and related lawsuits, asserting the Salt Lease terminated by confusion. Occidental opposed the summary judgment motions, arguing the parties submitted the confusion claim to the arbitration panel and were awaiting a decision. See **Florida Gas Transmission Company, LLC**, 285 So.3d at 1096. The trial court granted the motions, and signed judgments in favor of Texas Brine and against Occidental, decreeing the Salt Lease "terminated as a matter of law as of March 27, 2008," and dismissing with prejudice any actions based on the Salt Lease arising thereafter. **Id**. Occidental appealed and this court vacated the judgment and remanded the matter, finding that the issue was appropriate for determination by the arbitration panel rather than the trial court. **Id**. at 1101.

Shortly thereafter, Legacy Vulcan, which is not a party to the arbitration agreement, filed a motion for partial summary judgment asserting the Salt Lease

---

[3] Section 6.2 of the Amended Operating Agreement states in pertinent part, "If on the other hand, the Salt Lease terminates prior to December 31, 2017 (for reasons other than default by either party) the term of this Agreement shall be adjusted accordingly."

Section 5.1 of the Amended Facilities Lease states in pertinent part, "If on the other hand, the Salt Lease terminates prior to December 31, 2017 (for reasons other than default by either party) the term of this Lease shall be adjusted to coincide with the termination of the Salt Lease."

terminated by confusion on March 27, 2008, and that the ancillary contracts reliant upon the existence of the Salt Lease, i.e. the Amended Facilities Lease, the Amended Operating Agreement, and Assignment of Salt Lease, likewise cross-extinguished on that same date. Legacy Vulcan asserted that the consequences of this confusion were that the obligations arising under these contracts ceased to exist as of March 27, 2008, and warranted the dismissal of all claims based on or pursuant to the Salt Lease that arose after March 27, 2008. Legacy Vulcan's arguments in support of its motion relied heavily on those previously made by Texas Brine, and attached as evidence the above-mentioned contracts, the transfer documents, and previously issued judgments on the issue of confusion.

Although Texas Brine agreed that the Salt Lease extinguished on March 27, 2008 by operation of confusion, it opposed Legacy Vulcan's interpretation of the effects of such extinguishment. Alternatively, Texas Brine asserted that confusion may have not occurred due to Legacy Vulcan's potentially partial or invalid assignment to Basic Chemicals in 2005; another alternative argument presented by Texas Brine was that it had already accrued certain rights under the contracts prior to confusion, and therefore Texas Brine was still able to assert those claims against Legacy Vulcan.

On December 9, 2020, the trial court signed a judgment granting Legacy Vulcan's motion for partial summary judgment, finding that the Salt Lease, Operating Agreement, Facilities Lease, as well as any amendments thereto, and Assignment of Salt Lease "ceased to exist and have any effect as of March 27, 2008" either by operation of confusion as with the Salt Lease, or as a matter of law as it pertains to the remaining three contracts; that all obligations arising under or pursuant to those contracts were extinguished on March 27, 2008; and dismissing with prejudice any contractual claims brought by Texas Brine based on those contracts for damages arising after March 27, 2008. The judgment further noted

6

that the court did not address the legal effect of this ruling upon the claims pending in arbitration between Occidental and Texas Brine.

Ultimately, Texas Brine sought and obtained an order for devolutive appeal of the December 9, 2020 judgment, and Legacy Vulcan answered the appeal.

In addition to our review of the appeal of the December 9, 2020 judgment and Legacy Vulcan's answer to the appeal, we also review the writ filed by Legacy Vulcan seeking supervisory review of a different, but related, ruling of the trial court.[4] Relevant to the writ, which was assigned docket number 2021 CW 1267, Legacy Vulcan filed a subsequent motion for partial summary judgment regarding the effect of the extinguishment of the contracts; specifically, Legacy Vulcan sought to clarify the previous judgment and dismiss any of Texas Brine's remaining contractual claims against it asserting that all of Texas Brine's contractual claims became unenforceable when the obligations within those contracts were extinguished on March 27, 2008.

Texas Brine opposed this motion, arguing that the confusion ruling only extinguished Legacy Vulcan's obligations within the contracts prospectively from the date of extinguishment. Texas Brine further explained that the extinguishment of a contract necessarily results in different consequences than a finding of nullity and therefore, extinguishment did not erase all of Legacy Vulcan's obligations as if they never existed. Therefore, Texas Brine asserted that it was entitled to assert claims on breaches of contract that accrued prior to March 27, 2008.

The trial court denied Legacy Vulcan's motion for partial summary judgment, which was reduced to writing and signed on August 13, 2021. Legacy

---

[4] By order dated January 12, 2022, Legacy Vulcan's writ was referred to the panel to which 2022 CA 0004 is assigned.

Vulcan filed a writ seeking supervisory review which was referred to this panel for review in conjunction with the appeal of the December 9, 2020 judgment.[5]

## ASSIGNMENTS OF ERROR

### Texas Brine's Appeal

1. The trial court legally erred in granting summary judgment in favor of Legacy Vulcan by finding multiple contracts ceased to exist and have any effect, as to Legacy Vulcan, as of March 27, 2008.

2. The trial court legally erred in granting summary judgment in favor of Legacy Vulcan by extinguishing all of Legacy Vulcan's obligations to Texas Brine under multiple contracts.

3. The trial court legally erred by ordering that any actions by Texas Brine against Legacy Vulcan for damages arising after March 27, 2008 that are based on the Salt Lease, the Amended Operating Agreement, the Amended Facilities Lease, and the Assignment of Salt Lease are dismissed with prejudice.

### Legacy Vulcan's Answer and Writ

1. The trial court legally erred by allowing Texas Brine to pursue extinguished contractual claims.

2. The trial court legally erred by allowing Texas Brine to pursue contract claims that never accrued given Texas Brine's inability to satisfy all three elements of a breach of contract claim.

### Exception of No Right of Action

During the pendency of this appeal, on February 9, 2022, Texas Brine filed with this court a peremptory exception of no right of action. The basis of this exception is Texas Brine's contention that because Legacy Vulcan was not privy to the Salt Lease, it has no right of action to assert confusion and extinguishment thereof.

---

[5] We grant Texas Brine Company, LLC's motion to supplement appellate record with the transcript of the hearing on motion for new trial, as well as the trial court's August 13, 2021 judgment denying Legacy Vulcan's motion for partial summary judgment, and the trial court's reasons for judgment.

8

Legacy Vulcan strongly opposes the exception, urging that an exception of no right of action is an inappropriate vehicle to challenge Legacy Vulcan's affirmative defense to Texas Brine's contract claims, citing **Bubola v. Stutts**, 2008-0183 (La. App. 1st Cir. 9/12/08), 2008 WL 4191020, *5 (unpublished), wherein this court found that there was no procedural basis for a plaintiff or plaintiff-in-reconvention to assert an exception of no right of action in order to defeat a defense raised by a defendant or defendant-in-reconvention. Legacy Vulcan further argues that should the exception be granted, it would take away Legacy Vulcan's right to defend itself from Texas Brine's contractual claims. Finally, Legacy Vulcan asserts that Texas Brine inappropriately filed its exception of no right of action for the first time with this court.

Filing a peremptory exception for the first time on appeal is permitted by La. Code Civ. P. art. 2163. However, that Article makes consideration of such an exception discretionary with the appellate court. **Foundation Materials, Inc. v. Nichols**, 2014-0139 (La. App. 1st Cir. 9/17/14), 2014 WL 4658207, *8, (unpublished), writ denied, 2014-2171 (La. 12/8/14), 153 So.3d 445, citing **Southern States Masonry, Inc. v. J.A. Jones Construction Company**, 507 So.2d 198, 207 (La. 1987), and **Capital Loans, Inc. v. Stassi**, 195 So.2d 670, 672 (La. App. 1st Cir. 1967), writ refused, 199 So.2d 912 (La. 1967). Because this exception addresses an argument alluded to by Texas Brine, we will briefly discuss the exception.

Extinguishment of an obligation in any manner is an affirmative defense, and a party asserting such a defense bears the burden of proof. See **Boon v. Boon**, 593 So.2d 1289, 1292 (La. App. 1st Cir. 1991); La. Code Civ. P. art. 1005. In the matter before us, Legacy Vulcan asserted the defense of extinguishment of certain obligations under which Texas Brine seeks to hold it liable, including those found within the Assignment of Salt Lease and the Amended Operating Agreement. As

9

will be more fully addressed below, because of the interrelated nature of the contracts in this case, we find Legacy Vulcan has the right to challenge the status of the Salt Lease in order to attempt to carry its burden to prove the obligations of which it was a party to were extinguished. Therefore, we deny this exception.

## STANDARD OF REVIEW

A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Danos Tree Service, LLC v. Proride Trailers, LLC**, 2017-1546 (La. App. 1st Cir. 7/10/18), 255 So.3d 1078, 1082.

## DISCUSSION

The facts underlying this matter do not appear to be in dispute, as both Legacy Vulcan and Texas Brine agree that over a period of time and through a series of transactions, Occidental became the lessee of the Salt Lease of which it was already lessor, which caused the Salt Lease's extinguishment due to confusion. As noted above, the issues presented to this court focus on the legal effects of such an occurrence and what it means for the parties involved.

### The Salt Lease

Texas Brine initially argues that the trial court erred in finding that the Salt Lease ceased to exist and have any effect as to Legacy Vulcan. Texas Brine asserts, and this court agrees, that confusion extinguishes obligations rather than contracts. Specifically, La. Civ. Code art. 1903 states that when the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion. An obligation is a legal relationship, La. Civ. Code art. 1756, and a source of obligations is a contract. La. Civ. Code art. 1906 & see Comments – 1984, comment (c). With these principles in mind, we find that the Salt Lease was

10

a source of numerous obligations which included: the obligation to lease a 40-acre tract of land for the purpose of brine exploration; the obligation to pay royalties for minerals extracted; the obligation to mine in a prudent manner; etc. When Occidental became both lessee and lessor of the Salt Lease, it essentially became obligor and obligee of all the obligations contained within the lease, and therefore, confusion extinguished all obligations and the entire legal relationship set forth in the Salt Lease such that the Salt Lease no longer served as a source of obligations. We find no merit in Texas Brine's argument that there are obligations within the Salt Lease that survived as to Legacy Vulcan alone.

We likewise find Texas Brine's reliance on **Worldwide Remediation, Inc. v. Onebane, Bernard, Torian, Diaz, McNamara & Abell Law Firm**, 211 F.3d 948 (5th Cir. 2000), to be misplaced. In **Worldwide's** brief discussion of confusion, the court found that the doctrine of confusion was inapplicable when parties were both obligors and obligees of multiple obligations, but neither was ever both obligor and obligee of the same obligation. We find this case to be inapplicable. Although **Worldwide** correctly states that in order for confusion to occur, one party must be both obligor and obligee to an obligation, that is precisely what occurred here when Occidental became both lessor and lessee of the Salt Lease.

We are further unpersuaded by Texas Brine's argument that the Salt Lease obligations were not extinguished as to Legacy Vulcan alone because of solidarity. Texas Brine cites to La. Civ. Code art. 1905 which provides, "If a solidary obligor becomes an obligee, confusion extinguishes the obligation only for the portion of that obligor." Likewise, the same article provides, "If a solidary obligee becomes an obligor, confusion extinguished the obligation only for the portion of that obligee." In the scenario before this court, Occidental was not a solidary obligor that became an obligee, nor a solidary obligee that also became an obligor, but the

11

sole obligee that became an obligor. We find, based on the undisputed material facts before us, that the trial court correctly ruled that the obligations contained within the Salt Lease were extinguished based on confusion as of March 27, 2008.

**The Amended Operating Agreement and Amended Facilities Lease**

Texas Brine next argues that the trial court erred in finding that the Amended Operating Agreement and Amended Facilities Lease terminated or cross-extinguished simultaneously with the Salt Lease. We find no merit in this assignment of error. Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. La. Civ. Code art. 1983; **Waterworks District No. 1 of DeSoto Parish v. Louisiana Department of Public Safety & Corrections**, 2016-0744 (La. App. 1st Cir. 2/17/17), 214 So.3d 1, 5, writ denied, 2017-0470 (La. 5/12/17), 219 So.3d 1103. Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. **Waterworks**, 214 So.3d at 5.

The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. **Waterworks**, 214 So.3d at 5. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the

12

parties. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. **Waterworks**, 214 So.3d at 5; see also La. Civ. Code art. 2047.

Section 6.2 of the Amended Operating Agreement and Section 5.1 of the Amended Facilities Lease, clearly and unambiguously demonstrate the intent of the parties that should the Salt Lease terminate prior to the set date of December 31, 2017, both agreements would be adjusted to coincide with the termination of the Salt Lease; or to put it more plainly, terminate on that same date. Therefore, we find no error in the trial court's ruling that both the Amended Facilities Lease and Amended Operating Agreement terminated on the same date the Salt Lease was extinguished on March 27, 2008.

We further find no error in the trial court's finding that the obligations within the Amended Facilities Lease and Amended Operating Agreement cross-extinguished on March 27, 2008 due to the extinguishment of the obligations within the Salt Lease. An obligation cannot exist without a lawful cause. La. Civ. Code art. 1966. The cause is the reason why a party obligates himself. La. Civ. Code art. 1967. From the language of the documents themselves, it is clear that the reason why both Texas Brine and Legacy Vulcan obligated themselves in both the Amended Operating Agreement and the Amended Facilities Lease was because of the continued brine mining on the salt lease property which was permitted by the Salt Lease.[6] Thus, when the obligations and rights which allowed for prudent brine

---

[6] See, "Recitals" in Amended and Restated Operating and Supply Agreement which provide in pertinent part:

> WHEREAS, [Occidental], as lessor, and Texas [Brine], as lessee, entered into a certain Salt Lease (Amended and Restated) dated as of July 18, 1975 (the "Salt Lease")...with respect to the following described premises (the "Salt Lease Premises")...

> WHEREAS, pursuant to the Salt Lease, Texas [Brine] received the rights, *inter alia*, to explore, prospect, drill and produce salt brine, and to transport salt brine from and across the Salt Lease Premises, and to construct wells and other structures thereon for purposes incidental to the production and transportation of salt brine, all as more specifically described in the Salt Lease; and

mining on the Salt Lease property were extinguished, the reason for entering into the obligations found within the Amended Operating Agreement and Amended Facilities Lease likewise cross-extinguished on March 27, 2008. See 5 La. Civ. L. Treatise, Law of Obligations, 16.61 (2d ed.) (In bilateral and commutative contracts, performance of the obligation of one party is the cause of the obligation of the other and an obligation cannot exist without a cause.), citing La. Civ. Code art. 1966; 1 Litvinoff, Obligations 399 (1969).

**Assignment of Salt Lease**

With regards to the Assignment of Salt Lease, we recognize that the obligations found within this contract were not extinguished due to confusion nor does it contain a cross-terminating clause. However, we find the obligations within the Assignment of Salt Lease cross-extinguished on the date of confusion because it too lost its cause. A reading of the Assignment of Salt Lease makes clear that it exists for the sole purpose of transferring the rights and obligations of

WHEREAS, pursuant to that certain Construction Contract and Facilities Lease between Texas [Brine], as lessor, and [Legacy] Vulcan, as lessee...Texas [Brine] constructed and leased to [Legacy] Vulcan...certain improvements located on the Salt Lease Premises and also a pipeline to deliver brine from the Salt Lease Premises to [Legacy] Vulcan's plant site at Geismar...

WHEREAS, Texas [Brine] and [Legacy] Vulcan also entered into an Operating and Supply Agreement...pursuant to which Texas [Brine] operates the facilities leased to [Legacy] Vulcan pursuant to the Original Facilities Lease...for the purpose of producing and delivering salt brine to [Legacy] Vulcan's plant at Geismar, Louisiana[.]

See, "Recitals" in Amended and Restated Facilities Lease Agreement which provide in pertinent part:

WHEREAS, [Occidental], as lessor, and Texas [Brine], as lessee, entered into a certain Salt Lease (Amended and Restated) dated as of July 18, 1975 (the "Salt Lease")...with respect to the following described premises (the "Salt Lease Premises")...

WHEREAS, pursuant to the Salt Lease, Texas [Brine] received the rights, *inter alia*, to explore, prospect, drill and produce salt brine, and to transport salt brine from and across the Salt Lease Premises, and to construct wells and other structures thereon for purposes incidental to the production and transportation of salt brine, all as more specifically described in the Salt Lease; and

WHEREAS, pursuant to the Original Facilities Lease...Texas [Brine] has constructed and leased to [Legacy] Vulcan for the consideration and on the terms and conditions set forth in said Original Facilities Lease, certain improvements located on the Salt Lease Premises and also a pipeline to deliver brine from the Salt Lease Premises to Vulcan's plant site at Geismar[.]

14

the Salt Lease from Texas Brine to Legacy Vulcan. Without a Salt Lease, there can be no assignment thereof. Therefore, this contract likewise cross-extinguished on March 27, 2008. See 5 La. Civ. L. Treatise, Law of Obligations, 16.61 (2d ed.), citing La. Civ. Code art. 1966; 1 Litvinoff, Obligations 399 (1969).

**Effects of Confusion and Cross-Extinguishment**

Lastly, Texas Brine appeals the trial court's dismissal of all of its claims for damages based on the Salt Lease, the Amended Operating Agreement, the Amended Facilities Lease, and the Assignment of Salt Lease, against Legacy Vulcan arising after March 27, 2008. Legacy Vulcan in turn seeks review of Texas Brine's ability to assert claims based on these contracts that "accrued" prior to that date.

As this court previously noted, an obligation may be extinguished due to confusion. Confusion is not only one of the manners in which obligations are extinguished, but also a legal obstacle that makes an obligation ineffective. "Union of qualities of obligee and obligor," 5 La. Civ. L. Treatise, Law of Obligations 20.1 (2d ed.). The fundamental concept is that an obligation ceases to exist when confusion occurs. Comment, "Extinguishment of Obligations by Confusion," 36 Tul. L. Rev. 521 (1962). Therefore, we find the trial court correctly found that upon extinguishment of the Salt Lease and cross-extinguishment of the Assignment of Salt Lease, Amended Operating Agreement, and Amended Facilities Lease on March 27, 2008, the obligations found therein ceased to exist and therefore cannot be the basis of a cause of action for any damages arising thereafter. However, a question remains regarding the effects of extinguishment on obligations while the contracts were still in effect.

Legacy Vulcan argues that as a matter of law, extinguishment of an obligation bars any action based on that obligation, even if the action fully accrued based on a breach and damages arising prior to extinguishment. Put another way,

15

Legacy Vulcan asserts that extinguishment of an obligation precludes subsequent enforcement of that obligation, even if enforcement is sought based on a prior actionable failure to perform.

In support of its argument, Legacy Vulcan cites **Black River Crawfish Farms, LLC v. King**, 2017-672 (La. App. 3rd Cir. 2/7/18), 246 So.3d 1. In **Black River Crawfish**, a landowner filed suit against several alleged mineral servitude owners, asserting restoration claims for the contamination of its property resulting from historical oil and gas exploration activities. The named defendants filed an exception of prescription of nonuse. The court noted that prescription due to nonuse is a mode of extinction, and in this particular case, by operation of law, the real right of the mineral servitude at issue was extinguished by "prescription resulting from nonuse for ten years" at the latest, in January 2000, at which time, the real right along with any correlative obligations arising therefrom, no longer existed. **Id**. at 6-7. The Third Circuit went on to explain that when the mineral servitude was extinguished in January 2000, the dismembered portions of ownership reverted to the landowner. Pursuant to the rule of confusion, as both the owner of the land and the minerals, the landowner could not be bound to render a performance to itself (restore the land from contamination), and therefore, the real obligations set forth in the mineral code, specifically the duty to restore, were extinguished in 2000 when the ownership of the surface estate was reunited with the ownership of the minerals. Consequently, when plaintiff acquired the property in 2003, it never acquired the right to enforce the real obligation to restore the surface, even though it had been contaminated when the duty existed, due to the confusion of the obligation three years prior to the sale. **Id**. at 7.

Legacy Vulcan further cites to **Dumas v. U.S. Fidelity & Guaranty Co.**, 134 So.2d 45 (La. 1961) and **Addison et al. v. Employers Mut. Liability Ins. Co. of Wisconsin**, 64 So.2d 484 (La. App. 1st Cir. 1953), for the proposition that

16

extinguishment eliminates any right to pursue a claim, even if it is actionable at the time of extinguishment. In these cases, spouses were involved in car accidents with one spouse being injured through the negligence of the other, resulting in the injured spouse bringing suit against the negligent spouse, and the negligent spouse's insurer. In both cases, prior to the conclusion of the suit, the injured spouse died. Both the **Dumas** and **Addison** courts found that the remaining right of action vested in the surviving spouse as surviving beneficiary, and resulted in the extinction of the injured spouse's cause of action due to confusion which acted as a bar to recovery. Therefore, the combining of the rights of obligor and obligee in one spouse triggered confusion and resulted in the release of the insurance companies from all liabilities under the negligent spouse's insurance contracts.

In order to demonstrate that no ancillary obligations could survive extinguishment of the principle obligation, Legacy Vulcan also notes the federal fifth circuit's case, **HDRE Business Partners Limited Group, LLC v. RARE Hospitality International, Incorporated**, 834 F.3d 537, 540 (5th Cir. 2016). The **HDRE** court found that a novation had extinguished the parties' rights under an agreement which included a provision that the prevailing party's attorney's fees were paid. The court further noted that it had found no Louisiana case enforcing an attorney's fees provision – or, any individual provision – of a subsequently novated agreement. **Id**. at 541 n.2.

Therefore, Legacy Vulcan concludes, that extinguishment of an obligation is the extinguishment of the entire legal relationship between the parties, including all correlative rights and duties which precludes their enforcement forevermore, whether performed or unperformed, matured or unmatured, liquidated or unliquidated.

In contrast, Texas Brine argues that Legacy Vulcan remains liable for the consequences of its pre-2008 conduct, all of which occurred under the framework

17

of the contracts prior to any termination of those contracts. In its brief to the trial court, Texas Brine cited in support, **Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.**, 390 F.3d 336 (5th Cir. 2004).

In **Millennium**, plaintiff and defendant entered into a contract in 1961 under which defendant would perform maintenance services at one of plaintiff's plants. The parties amended their contract, specifically the indemnity provision several times. By letter dated April 5, 1995, plaintiff terminated the contract. In 1998, defendant's employees filed suit in Texas claiming injuries from exposure to asbestos in plaintiff's workplaces and named plaintiff as defendant. Citing the indemnity provisions of the contract, plaintiff notified defendant of the claims and requested indemnity which defendant refused to provide. The district court found that the indemnity clause terminated along with the contract in 1995, or alternatively, the indemnity clause was eliminated in the 1994 amendment to the contract. The district court therefore dismissed plaintiff's claims and plaintiff appealed. The U.S. Fifth Circuit reversed, citing a Texas statute which states that upon the termination of a contract, rights based on prior breaches of performance survive the termination. The court further noted that the federal Fourth and Ninth Circuits have recognized that rights that have vested or accrued under a contract prior to the termination of the contract are not automatically extinguished upon termination. **Id**. at 340-41.

In its brief filed with this court, Texas Brine cites to **Sewerage & Water Board of New Orleans v. Bertucci**, 65 So.2d 377, 384 (La. 1953) in support of its argument that contractual claims may be asserted when damage is discovered after the termination of a contract. Texas Brine also asserts that the jurisprudence relied on by Legacy Vulcan, specifically the **Dumas** and **Addison** opinions, are distinguishable as the confusion that occurred here was not a result of Legacy

Vulcan becoming both obligor and obligee of any of the obligations at issue, whereas that was the factual scenario in the other two cases.

The crux of this matter is the determination of the legal effect of extinguishment of an obligation. This court has not found, and Legacy Vulcan has not provided, any support for the argument that an actionable obligation cannot be enforced once extinguishment occurs, when the parties to the obligations were not the cause of the extinguishment. Therefore, this court finds that Legacy Vulcan failed to carry its burden that it is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

## CONCLUSION

For the foregoing reasons, we affirm the trial court judgment dated December 9, 2020, finding that the obligations in the Salt Lease were extinguished as a result of confusion on March 27, 2008; that the Amended Operating Agreement and Amended Facilities Lease, along with the Assignment of Salt Lease were cross-extinguished on that same date; and dismissing with prejudice any actions brought by Texas Brine Company, LLC against Legacy Vulcan, LLC for damages arising after March 27, 2008, based on the aforementioned contracts.

For the foregoing reasons, we affirm the trial court judgment dated August 13, 2021, denying Legacy Vulcan's motion for partial summary judgment regarding any claims by Texas Brine Company, LLC against Legacy Vulcan, LLC for damages arising before March 27, 2008, based on the aforementioned contracts.

The parties to this appeal are to bear its own costs of this appeal.

**JUDGMENT AFFIRMED; MOTION TO SUPPLEMENT GRANTED; WRIT DENIED; EXCEPTION OF NO RIGHT OF ACTION DENIED.**